THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY D. NAVIS, Defendant-Appellant.

(No. 12450;

Fourth District—December 30, 1974.

W. K. Kidwell and Robert E. Cummins, both of Mattoon, for appellant.

Paul L. Stone, State's Attorney, of Sullivan, for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

The defendant appeals from convictions of driving while his driver's license was revoked and driving under the influence of intoxicating liquor. He presents as issues: (1) whether it was error to try the two offenses in a consolidated trial and to deny defendant's motion to sever; (2) whether it was error to admit the certified copy of the Secretary of State's driving record of a person with the same name as the defendant without further evidence that the defendant was the person named on those records; (3) whether, if the conviction of driving with a revoked license is improper as alleged in issue 2, the defendant was denied a fair trial on the co-charge of driving while under the influence of intoxicating liquor; and (4) whether it was error for the court to allow a demonstration of the intoxilyzer machine.

The arresting officer, an Illinois state trooper, testified that the county road where he stopped the defendant at approximately 1:30 A.M. on March 3, 1973, was quite rough and that there was scattered fog on the morning in question. The trooper testified that defendant's car was weaving back and forth continuously across the road at about 30 to 35 mph and that he had to operate the siren and red light approximately one mile before the defendant's car stopped. The trooper testified that the defendant produced a driver's license with an expiration date of 1970, that the defendant had a strong smell of alcoholic liquor, and that he was unable to stand erect or walk in a straight line. Defendant was taken to Bethany, where, along with corporal Lambird, the trooper administered several physical tests involving coordination and dexterity which the defendant could not perform satisfactorily. The trooper testified that he read the *Miranda* warnings and ascertained that the defendant understood them and also read to the defendant a request to submit to a test of breath to determine intoxication. The trooper testified that the first intoxilyzer test was administered at 3:30 A.M. and the second

at approximately 4:10 A.M. and that from the time he had stopped the defendant, the defendant had consumed no food or liquor nor had he regurgitated. The conservation officer who was riding with the state trooper at the time of the defendant's arrest corroborated the circumstances related above. The conservation officer testified that at the time the defendant's automobile was stopped there was scattered fog and that the defendant was driving from one side of the road to the other. He testified that the defendant was unable to walk steadily, talked in a mumbling fashion, and smelled of alcohol.

The defendant's version of the facts is that on March 1, 1973, he had had a tooth extracted, causing such great pain and discomfort that he did not go to work the next day. Defendant testified that on March 2 he left his home in Findley and drove to Sullivan, where he consumed one bottle of beer. After leaving Sullivan, he went to Mattoon where he purchased a bottle of pain pills and a bottle of Scope mouthwash, and consumed another beer. During the rest of the afternoon and evening of March 2, the defendant drove from Mattoon to Effingham, to a lake, back to Effingham, to Siegel, to Neoga, stopping in each town to have one or two beers, and during his travels, washing his mouth out with Scope to relieve the pain of the wound left by the extracted tooth. Defendant testified that at the time he was stopped by the trooper early on the morning of March 3, 1973, he was driving in heavy fog, attempting to dodge the numerous chuckholes in the road, and that his speech may have been slurred due to his swollen gum and irritated mouth.

The State's answer to defendant's motion to produce tangible items disclosed that the State had defendant's driver's record, which was available for inspection. At the trial, the arresting officer identified a certified copy of the defendant's driver's record as that received from the Secretary of State's office. Defendant objected on the grounds that no proper foundation had been laid and that there was no other evidence that the person described in the exhibit was the defendant. Officer Young, an operator of the breath-analysis machine, or "intoxilyzer," was called by the State and, after testifying to his training and qualifications, identified a log book of the intoxilyzer which was kept in the cabinet of the machine to which only certified operators had keys. Officer Young testified that, as the log book indicated, he had tested the machine on February 22, 1973, and again on March 7, 1973 (before and after the defendant was tested on the machine), and that both times it was within tolerances. Officer Young explained the procedure of the test and then testified in general as to how the machine works and how it is used, referring to a machine in the courtroom. Extensive testimony on how the machine worked and how it is used was adduced, the State's Attorney

explaining that the machine is relatively new and that he wished to establish for the record (1) that the machine is tested periodically, (2) its reliability, and (3) the several improved safeguards against intentional tampering or unintentional mistakes. On cross-examination and on re-direct examination, the emphasis was on the possibility of the machine registering if one held or swished alcohol in the mouth without ever swallowing it—in this way responding to defendant's testimony that he had used mouthwash containing alcohol at least 20 times during the evening in question without actually swallowing any of it. Officer Young testified further to the machine's reliability so long as a test is made 20 minutes after the subject has last placed anything in his mouth or regurgitated.

Next, Corporal Lambird, who actually tested the defendant, was called, and, after testifying to his training and certification as an operator of the machine, described the testing of the defendant. He testified that the defendant's first test showed .19 percent alcohol, and after 16 minutes, the second test was taken indicating .20 percent, and that prior to the first test the defendant had been in his presence 25-30 minutes, during which time he did not drink, smoke, or regurgitate.

On June 6, 1973, the defendant filed a motion for severance of the actions. On June 7, 1973, defendant filed a waiver of trial by jury, and a bench trial was held on June 7 and 8, 1973. The court first heard the arguments on the defendant's motion for severance which the defendant then contended should be granted and now contends was error to deny, on the grounds that if the charges were tried jointly, the prosecution would introduce the defendant's driver's license record into evidence on the driving-while-license-is-revoked charge, which would disclose that the defendant had previously been convicted of driving while intoxicated and thus prejudiced the defendant on that charge. More generally, the defendant contended that being tried for these two charges together in itself would prejudice him because of a presumed inference that the guilt of one would establish the guilt of the other. The trial court denied the motion, saying that the defendant had failed to show any prejudicial result. The court found the defendant guilty of both charges at the conclusion of the trial on June 8, 1973, and following a presentence investigation and a hearing held on June 22, 1973, the defendant was sentenced to the Vandalia State Penal Farm to serve 10 months on the driving-while-intoxicated charge (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) and 5 months on the driving-while-license-was-revoked charge (Ill. Rev. Stat. 1973, ch. 95½, par. 6—303(a)), to be served concurrently.

The defendant cites *People v. Limauge*, 89 Ill.App.2d 307, 231 N.E.2d 599, for the proposition that severance should have been granted. Sec-

tion 3—3(a) of the Criminal Code of 1961 states that when the same conduct of the defendant establishes the commission of more than one offense, he may be prosecuted for each such offense; section 3—3(b) provides that if the several offenses are known to the prosecutor and within the jurisdiction of a single court, they must be prosecuted in a single prosecution if based on the same act, except as provided in subsection (c), which provides that if two or more offenses are charged as required by subsection (b) the court in the interest of justice may order that one or more of such charges be tried separately. (Ill. Rev. Stat. 1973, ch. 38, par 3—3.) The case cited above was concerned with the statutory mandate that if different offenses "are based on the same act" they "must be prosecuted in a single prosecution," and concluded that it did not preclude the defendant from being tried and convicted of reckless homicide after pleading guilty and being sentenced for driving while his license was revoked. Likewise, in the instant case, the defendant's "act" of driving while intoxicated was independent of and had no casual or consequential relationship with the simultaneous "act" of driving while his license was revoked. The defendant, while driving the same automobile at the same time and the same place, committed two completely separate offenses directed at different evils and having no common ground, except the driving of the automobile.

■■ Section 114—8 of the Code of Criminal Procedure of 1963, entitled "Motion for Severance," provides that: "If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief that justice may require." (Ill. Rev. Stat. 1973, ch. 38, par. 114—8.) The defendant's reliance on *People v. Woods,* 23 Ill.2d 471, 179 N.E.2d 11, for the proposition that a defendant cannot be forced to stand trial upon disassociated felonies is clearly misplaced. Likewise, *People v. Fleming,* 121 Ill.App.2d 97, 257 N.E.2d 271, is also distinguishable. In that case, it was held to be error to join two separate unrelated offenses in the same trial and error to deny the motion to sever. In *Fleming,* the defendant was convicted of theft of an automobile and theft of property; count I charged theft of the automobile in August 1966, and count II charged theft by deception for the sale of the same automobile in March 1967. Therefore, those two offenses were separated in time by 8 months, there were separate victims, and there was no general underlying scheme or plan with the only connection being that the same automobile was involved. In the instant case, the two offenses of driving while the license was revoked, and driving while intoxicated,

do not have the same elements, except for the driving of the automobile, but clearly both were being committed at the same time during the same course of conduct and so were properly joined. The key word in section 114—8 on severance is "prejudice." The defendant asserts two forms of prejudice resulting from the denial of his motion: (1) that evidence showing his license had been revoked would disclose a previous conviction for driving while intoxicated which would prejudice him on that latter charge; and (2) the defendant would be prejudiced by finding him guilty on one or the other or both of the charges in that the presumption of innocence would be diminished. The Committee Comments to section 114—8 state that the granting of a motion to sever remains in the sound discretion of the trial court. In the instant case, there was a bench trial and there is no reason to assume that the judge would be influenced by evidence on one charge to defendant's prejudice on the other, and it does not appear that the trial court abused its discretion in denying the motion. *People v. Pagan,* 52 Ill.2d 525, 288 N.E.2d 102.

The defendant next urges that it was error to admit into evidence over his objection a certified copy of the driving record of a person with the same name as the defendant without other evidence that the defendant was the person named on the Secretary of State's record. In support of his contention, the defendant cites cases dealing with the introduction into evidence of prior convictions of a criminal defendant where it has been held that the State must show that the defendant is the person named in those records. For example, in *People v. Stewart,* 23 Ill.2d 161, 177 N.E.2d 237, the defendant had been sentenced to life imprisonment as a habitual criminal upon the evidence of a certified copy of a conviction of one "Sherman Edward Stewart, alias Sherm Stewart" of burglary in another county 10 years earlier without any evidence that it was the same man as the defendant. Absent evidence to identify the defendant as the same person named on an exhibit showing prior convictions, the trial court should not impose a penalty permissible only for second or subsequent convictions. However, section 6—118 of the Illinois Vehicle Code pertaining to fees for licenses and permits under the article, in subsection (f), states:

> "An abstract issued by the Secretary of State pursuant to Section 6—118 of this Act, on request of a law enforcement agency, for the record of a named person as to the status of his driver's license shall be prima facie evidence of the facts therein stated and if the name appearing in such abstract is the same as that of a person named in an information or warrant charging a violation of this Section, such abstract shall be prima facie evidence that the per-

son named in such information or warrant is the same person as the person named in such abstract." (Ill. Rev. Stat. 1973, ch. 95½, par. 6—118(f).)

Therefore, the certified driving record from the Secretary of State's office introduced into evidence in the instant case bearing the defendant's name has a statutory presumption of correctness. The State had disclosed to the defendant that it had a copy of his driving record and that it was available for inspection before trial. The presumption in favor of these records seems quite reasonable since the Secretary of State's records identify drivers much more precisely than merely by name (physical characteristics, age, sex, address), so that there would be a very light burden on the defendant to overcome the presumption if the records sought to be introduced against him were actually not his own.

 The defendant's final issue is that it was error to admit into evidence the demonstration of the intoxilyzer machine by the operator because such demonstration was not relevant to any issue in the case. The General rule is that a court has reasonable discretion in admitting or rejecting exhibits or in permiting demonstrations, and exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant. (*People v. Smith,* 1 Ill.App.3d 518, 275 N.E.2d 268.) The demonstration in the instant case went hand-in-hand with the expert witnesses' testimony as to the operation and reliability of a relatively new machine for determining alcoholic content of the blood. At the trial, the defendant stressed his frequent use of mouthwash containing 18 percent alcohol in support of his defense that a machine measuring alcohol content of the blood by analyzing his breath might be caused to register when, in fact, none of the mouthwash had been swallowed. The experts' testimony and demonstration were admitted for the purpose of rebutting that contention, to demonstrate safeguards against accidental or purposeful malfunctions or mistakes and to show that the machine's accuracy had been tested, both before and after the defendant's test. As to possible prejudice to the defendant, this is not a case where questionable peripheral evidence was used to excite the trier of fact or for dramatic effect, but was simply to aid in determining what credibility should be given the direct evidence of the meter readings of .19 percent and .20 percent in conjunction with the provision of the Illinois Vehicle Code providing that an analysis of .10 percent or more gives rise to the presumption that the person is under the influence of intoxicating liquor. (Ill. Rev. Stat. 1973, ch.. 95½, par. 11—501(c).) Here the trial court properly exercised its discretion, there having always been a distinction between real evidence and demonstrative evidence, the latter not necessarily being to prove an issue in the case, but to aid the

trier of fact in interpreting, understanding, and weighing other evidence and testimony. The defendant's test results on the machine were validly introduced into evidence, the defendant's consent to the test was uncontradicted, and the machine operator's qualifications were established. The demonstrative evidence was not inflammatory, and the record shows the court's concern for the reliability of a relatively new machine and how it is able to obtain a percentage of alcohol in the blood from a sample of a person's breath in light of defendant's contention that it might have been misled by his use of mouthwash.

Affirmed.

·SMITH and TRAPP, JJ., concur.