THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD URAN, Defendant-Appellant.

Third District    No. 3—86—0422

Opinion filed July 8, 1987.

Michael A. Murer, of Murer & Nudo, of Joliet, for appellant.

Edward Petka, State's Attorney, of Joliet (Howard R. Wertz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Richard Uran, was convicted of two counts of felony theft and four counts of possessing a motor vehicle or motor vehicle part with knowledge that the vehicle identification number (VIN) had been removed or falsified. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1); ch. 95½, par. 4—103(a)(4).) He was sentenced to concurrent terms of five years for each theft and three years for each motor vehicle offense. He appeals from his convictions, raising arguments related to the court's denial of defense motions to suppress evidence. We affirm.

In a pretrial motion, the defendant sought to suppress the evidence seized as a result of his June 9, 1983, arrest. In support of that motion, the defendant asserted that his arresting officers lacked probable cause for the traffic stop and vehicle search which preceded his arrest. Specifically, the defendant asserted, *inter alia*, that the windows on the cap of the truck he was driving on the night of his arrest were mirrored or covered so that it would have been impossible for

the officers to have observed through them a violation supporting his stop and search. The defendant also sought specifically to suppress the truck. To support the latter portion of his suppression motion, the defendant relied upon the fact that on June 16, after the defendant had presented a court order for release of the truck to him, the police searched the vehicle without a warrant.

The evidence in the lengthy pretrial suppression proceedings included the following. Will County sheriff's officer Gregg Jarrette testified that late on June 8, 1983, he received an anonymous telephone call at home. The caller described a pick-up truck which might soon be transporting stolen auto parts. Jarrette and his fellow officer Mike Barton, who was visiting at Jarrette's home, drove to the area described by the caller. They observed a truck matching the caller's description and followed it to a truck stop, where the truck parked. The officers radioed for assistance and then Jarrette, Barton, and an Officer Kryda used a flashlight to look into the window on the passenger side of the truck's cap. Each of the three officers testified that he observed automobile parts, including a door with a removed VIN, stacked inside the camper.

According to the officers' testimony, after viewing the VIN violation, they returned to their automobiles and waited for someone to return to the truck. When two men drove the truck away, the officers followed the truck and stopped it before it left Will County. After stopping the truck, the officers removed, then replaced, auto parts inside the truck. They also arrested the defendant driver and his passenger, Gary Heldt.

After stopping and searching the truck, the officers had it towed to a garage. There, they removed the auto parts from the truck, placing the removed items in no particular order and keeping no record of the loading arrangement or the unloading process. The following day, Friday, June 10, the reloaded truck was towed to the Will County sheriff's impoundment yard. On that date, evidence technician Officer Ronald Pruss noticed that the truck lacked a VIN in the area of its driver-side door. He secured the vehicle in the locked impoundment yard. On the following Monday, June 13, Officer Pruss unloaded the truck's contents, made a generalized inventory, and requested that a special agent from the National Auto Theft Bureau come to examine the truck. As he knew that the arrangement of the auto parts had been disturbed, he did not record the loading arrangement or the unloading process.

Officer Pruss was next concerned with the truck on June 15. At approximately 3:50 p.m. on that date, the defendant came to the po-

lice station with a court order for release of the truck to him. At that time, the truck was inoperable as the drive shaft was still disconnected following towing. Officer Pruss told the defendant that as the police mechanics were unavailable to reconnect the drive shaft, the truck could not be released. He declined to allow the defendant to reconnect the drive shaft and asked the defendant to return on the following day. On the following morning, police mechanics reconnected the drive shaft. Additionally, Special Agent Coy Strunk of the National Auto Theft Bureau examined the truck.

The defendant and his passenger testified that on the night of their arrest, one could not see into the windows of the truck's cap. According to their testimony, the rear window on the cap was mirrored and the side windows were covered so that it would have been impossible to see into the cap through them. The defendant also testified that even if the side window covering had been displaced so that one could see into the window, any view of VIN tags on the auto parts in the truck was blocked by blankets or pads around the parts and by the compact packing of the parts.

The court denied the defendant's suppression request. Initially, it found probable cause for the defendant's stop and arrest, based upon its findings that the truck cap windows had not all been blocked and that the officers had viewed a VIN violation through a cap window. The court further found that the officers were justified on June 15 in not releasing the truck pursuant to the defendant's release-of-evidence order.

On appeal following his convictions, the defendant raises two arguments concerning the court's denial of suppression. First, the defendant argues that the court erred in refusing to allow him access to the truck and auto parts so that he could reload the parts to show the court both the impossibility of the officers' accounts of viewing a VIN violation at the truck stop and exactly how the parts were loaded on the night of his arrest. The State argues, *inter alia*, that the court did not abuse its discretion in denying the defendant's request to present demonstrative evidence and, furthermore, that the defendant has not shown prejudice. We agree with the State.

■■ ■ The defendant sought to collect and present to the court evidence to explain or illustrate the loading arrangement of auto parts in the truck. The court had reasonable discretion to admit or reject such exhibits and demonstrations. (*People v. Chatman* (1981), 102 Ill. App. 3d 692, 430 N.E.2d 257; *People v. Navis* (1974), 24 Ill. App. 3d 842, 321 N.E.2d 500.) We will not disturb its decision denying the defendant's demonstration unless it represented an abuse of discre-

tion which prejudiced the defendant. (24 Ill. App. 3d 842, 321 N.E.2d 500.) Similarly, we will not disturb the court's determination on probable cause unless it is manifestly erroneous. *People v. Smith* (1981), 101 Ill. App. 3d 772, 428 N.E.2d 641.

Because of the police procedures followed in this case, there was no record of the truck cap's load arrangement at the truck stop, when the police allegedly viewed a VIN violation through the cap's window. Additionally, the court received no demonstration by the State that the instant automobile parts could have been loaded to make a VIN violation visible through the truck's cap window. The court relied on the conflicting testimony concerning the visibility of a VIN violation at the truck stop. It weighed the credibility of the officers against the credibility of the defendant and his passenger and found the officers more credible.

■ We find no abuse of discretion in the court's decision to deny the defendant access to the truck and the instant auto parts. Granting the defendant access to the truck and auto parts might have enabled the defendant to demonstrate that the truck could have been loaded to make VIN visibility impossible. Similarly, the defendant might have been able to demonstrate that there were difficulties with loading to make a VIN violation visible. Nevertheless, such possibilities were apparent to the court when it denied the defendant's access request. The court also was aware that any demonstrations by the defendant would not encompass all the possible loading arrangements and would necessarily be considered in light of the officers' testimony. We have no reason to find that the defendant's demonstration would have altered the court's determinations that the officers were more credible than the defense and that the officers' stop and search were properly based upon probable cause following the officers' truck-stop view of a violation through the cap's window. The defendant presents no other challenge to the court's denial of the first portion of his suppression request; and we find no manifest error in the court's denial of suppression.

■ The defendant's second argument on appeal is that the court erred in failing to grant his motion to suppress the truck. The defendant notes that the truck had been examined prior to his presentation of the evidence-release order. He asserts that once he presented the court order for release of the truck, the sheriff's department was disallowed to search the truck without a warrant.

In reply to the State's authority concerning administrative searches of a fire-damaged home, the defendant asserts that once the release order was presented, he could expect that his privacy associ-

ated with possession would be respected. (See *Michigan v. Clifford* (1984), 464 U.S. 287, 78 L. Ed. 2d 477, 104 S. Ct. 641.) In his primary argument, however, the defendant acknowledges that he presents no direct authority. Rather, he analogizes this case to *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942. In *Tyler*, as in *Clifford*, the United States Supreme Court held that fire victims have a reasonable expectation of privacy in fire-damaged premises, and that investigatory entries into such premises are subject to the fourth amendment of the United States Constitution.

The *Tyler* court considered a series of warrantless entries and investigations into a furniture store which burned in an apparent arson. Referring to exigency and plain view, the *Tyler* court upheld fire officials' entry, investigation, and seizure of evidence which were concurrent with an over-night fire. Similarly, the court approved entry and seizure of evidence which occurred the following morning. It observed that the entry and seizures on the following morning were a continuation of the original investigation. The court found, however, that the warrantless, nonconsensual entries and investigations which occurred 7 and 25 days later were detached from the initial exigency and warrantless entry. Consequently, it held those later searches invalid under the fourth amendment, and it ruled that evidence gathered from those later entries must be excluded from trial.

The fourth amendment's provisions on search and seizure protect legitimate expectations of privacy. If official inspection does not intrude upon a legitimate expectation of privacy, there is no "search" subject to the warrant clause. (*Illinois v. Andreas* (1983), 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319.) Additionally, no protected privacy interest remains in contraband once government officials have lawfully identified it as illegal. (See 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319.) Furthermore, multiple searches of a properly impounded vehicle do not violate the fourth amendment. *Florida v. Meyers* (1984), 466 U.S. 380, 80 L. Ed. 2d 381, 104 S. Ct. 1852.

In the instant case, given our finding that the officers had probable cause for stopping and searching the truck, there is no argument that the police improperly impounded the truck and its contents. Shortly after the proper impoundment and before the defendant presented his return-of-evidence order, Officer Pruss discovered that the truck itself bore a VIN violation. Upon that discovery, the defendant lost any legitimate expectation of privacy in the truck. Unlike in *Tyler* and in *Clifford*, the defendant here did not merely claim a privacy interest in premises where authorities had discovered evidence of illegal conduct. Rather, the item which the instant defendant

sought to suppress was itself identified as illegal and the defendant had lost any protectable privacy interest in it.

■ We are aware of no authority to hold that the defendant's privacy interests in the truck with the discovered VIN violation were regenerated upon his presentation of the evidence-release order. Thus, we find that the special agent's June 16 examination of the truck was not a "search" subject to the warrant clause. We also find that it is of no consequence that prior to the June 16 examination, officials had held and examined the truck for approximately a week. We find no reason to reverse the court's denial of suppression of the truck.

Based on the foregoing, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.