**People of the State of Illinois, Plaintiff-Appellee, v. Chester Turner, Defendant-Appellant.**

**Gen. No. 51,360.**

First District, Second Division.

February 6, 1968.

Bellows, Bellows & Magidson, and Herbert Barsy, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Chester Turner, appeals from a conviction by jury for the crimes of rape and robbery. He seeks a reversal contending that he was not proved guilty of the crimes charged beyond all reasonable doubt; that the court erred in allowing into evidence a sketch drawn by a police artist from a description supplied by prosecutrix; in allowing into evidence certain testimony of the arresting officer; in admitting testimony concerning defendant's silence during an accusatory statement by prosecutrix; and in refusing to suppress certain evidence seized from the defendant.

On November 26, 1964, at about 11:30 p. m., the prosecutrix, 32 years old and employed as an operating room supervisor at a hospital, was returning home from a hockey game. She was walking east from the bus stop at Cottage Grove Avenue on the south side of 60th Street in Chicago. She observed a white, late model automobile which she "thought was a Chevrolet or something like it." Subsequently, a police bulletin described the car as an Oldsmobile or Buick. The car passed her, then pulled to the curb a short distance ahead. A man whom she subsequently identified as the defendant, Chester Turner, got out of the car and walked toward her with his right hand in his pocket and told her not to cry out or make a sound; that he was not going to hurt her. He told her that "he needed money, that he needed a fix," and that he had a $50 to $60 a day "habit." He took $4.35 from her purse, all the money she had. He then forced her at gunpoint to walk east along Drexel Boulevard and through an empty lot, then along a fence to avoid the lights of a passing automobile. He walked behind her, with the gun at her head or to the side. He then marched her south through the alley, into a yard, and to the rear of a darkened three-story house, holding the gun at her side. He raised the gun to the back of her head and told her that he hated white people because they had been the cause of all his trouble. At this time she heard the gun

440

click. A light went on in the house and the man forced her into another yard across the alley. There he told her to take of her coat and lie down upon it on the ground. He then forcibly raped her. As he left the yard he told her she should not cry out or move or he would kill her. After being rebuffed at one apartment where she sought assistance, she encountered a special policeman of the University of Chicago whom she told of the attack and who summoned the Chicago Police. She described her assailant to the police as a Negro, male, 25 to 30 years of age, five feet ten to six feet, medium build, wearing a white or beige carcoat, hat and dark trousers. She also said that her assailant had medium color, rough skin. Defendant does not have rough skin. She also described the kind of gun carried by assailant.

After being examined at the hospital, she pointed out some cars for the police officers and looked at some photographs at the police station. On December 1st, 1964, she gave a description of her assailant to a police artist who composed a sketch subsequently admitted into evidence. In the early morning of December 14, 1964, defendant, Chester Turner, was stopped by Chicago Police officers for traffic violations. Since he had no driver's license, the officers transported him to the district police station to post bond. Prior to taking him to the station an officer searched him and found a .38 revolver. Defendant stated that he carried the gun because he often carried large sums of money from his restaurant. At the station one of the arresting officers noted that defendant fitted a description of a man wanted for rape and robbery. The complainant was notified and brought to the station where a lineup of seven men was held, from which she identified Chester Turner as her assailant.

At a preliminary hearing in March, 1965, prosecutrix was asked if defendant was the man who assaulted her and she replied, "I believe it is." She also testified at

this hearing that her assailant drove "a white car, a large one, to me, I wasn't sure, I'm not familiar with cars." At trial she testified "I really made up my mind that it was a Chevrolet afterwards, when I had time to think about it." She also testified that the gun taken from the defendant "looked like" the gun which her assailant carried.

On behalf of defendant, four witnesses testified that he had an excellent reputation for being a peaceable and law-abiding citizen. In addition, defendant's cousin, his brother, his girl friend, a hotel clerk and defendant testified to an alibi. At 8:00 or 8:30 p. m. on November 26th, defendant and his brother left the home of defendant's cousin, Ollie Gamblin. They picked up defendant's girl friend, Mary Snow, at about 9:00 p. m. They returned to get Gamblin, then all went to a tavern in the 1100 block on Kedzie Avenue, where they remained until after midnight. Defendant and Miss Snow went to a hotel at 48th and Indiana Avenue where they registered some time after midnight. They remained in the hotel until the following morning when Turner took her home and went to his place of business. The hotel desk clerk identified a hotel registration card, subsequently admitted into evidence, which showed that "Mr. and Mrs. Chester Turner" registered at the hotel some time between midnight on November 26th and 8:00 a. m. on November 27th. Separate time sheets maintained by the hotel which would have indicated the exact time of registration had been destroyed. The hotel clerk also testified that she recognized defendant as having registered that night, having seen him on other occasions.

Defendant also testified that he was 28 years old, married and the father of three children; that he operated a restaurant which employed nine people; that he had never been in any trouble with the law before.

There is no dispute as to the fact that prosecutrix was raped and robbed.

 In urging that he was not proved guilty beyond all reasonable doubt, defendant concedes that in certain cases a single positive identification is sufficient to sustain a conviction, but argues here that the testimony of the prosecutrix was not sufficiently clear and convincing to warrant the jury's finding him guilty in the face of his evidence of alibi. The adequacy of the identification raises a question of the credibility of the witnesses which is a matter for the determination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963) ; People v. Evans, 25 Ill2d 194, 184 NE2d 836 (1962). By any tests or standards applied, the testimony of prosecutrix was not vague, doubtful or uncertain. She described in some detail her assailant, the automobile, and the entire incident. We agree with the State that she was a good observer who remembered in considerable detail what she had seen. Furthermore, out of a police lineup of seven men, she picked defendant as her assailant. Her uncertainty as to the model and exact color of assailant's car and her description of his skin as being "rough" went only to her credibility as a witness and were matters to be taken into consideration by the triers of fact. The fact that assailant told prosecutrix that he was an addict in need of a "fix" while defendant was not a user of narcotics was another matter going to the credibility of the witnesses to be taken into consideration by the jury. The defendant cites People v. Cullotta, 32 Ill2d 502, 207 NE2d 444 (1965), for support that the identification in the instant case is vague, doubtful and unconvincing. In the cited case, defendant was identified by two policemen who had a fleeting glance of him in a store as they drove by in their patrol car. It is not in point in the instant case where prosecutrix had adequate opportunity to observe her assailant during her ordeal. The jury had before them

the alibi defense testified to by defendant and the several other witnesses. The jury concluded that the defense was not worthy of belief, and we are unable to state that such a conclusion is erroneous in view of the clear and convincing testimony of prosecutrix.

██ ██ Defendant contends that the trial court erred in allowing into evidence a sketch drawn by a police artist from a description given by the prosecutrix in that the sketch constituted hearsay evidence. "Hearsay evidence is testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Law of Evidence, § 225; People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963). Hearsay evidence is inadmissible even though it is in written form. Further, where a witness has no personal knowledge of the facts but his knowledge is derived entirely from information given by another, his testimony is incompetent and inadmissible as hearsay. People v. Grizzle, 381 Ill 278, 44 NE2d 917, 920 (1942).

██ In the case at bar, the sketch drawn by the police artist is his written out-of-court belief as to the likeness of the assailant. Further, it is not his belief based on what he had observed but his belief based on what he had been told by the prosecutrix. Nor does an artist's sketch based upon the observations of another amount to a photograph. As stated in United States v. Zurita, 369 F2d 474, CA 7th Cir (1966), "drawing is selective and interpretive, and an artist, even when attempting to copy or to work from another's direction, is not merely a stenographer with a peculiar system of shorthand. His work contains and reveals his impression from information given to him." The introduction of the sketch into evidence was improper.

 Defendant also urges that the trial court erred in permitting officer Malinowski to testify that he

recognized defendant from a description in a "wanted" bulletin; that the description "matched the gentleman that is in the courtroom now"; and that he informed the detectives that "we had a man in custody that matched the description of the man wanted." It was error to permit the officer to testify that Turner matched the complainant's description of her assailant. That was testimony that only she could give. Allowing him to testify that the defendant looked like the sketch amounted to allowing him to state a conclusion based upon the initial conclusion of a third party. It also violated the rule against hearsay evidence. The testimony of the officer amounted to an improper corroboration of the complainant's testimony identifying defendant as her assailant. Nor can the error in admitting the testimony be regarded as harmless in view of the fact that defendant was identified by but one witness. People v. Wright, 65 Ill App2d 23, 212 NE2d 126 (1965); People v. Lukoszus, 242 Ill 101, 89 NE 749 (1909). The error in admitting the testimony was amplified by the prosecutor referring to it in argument to the jury.

 State urges that the admission of hearsay evidence is harmless error when it is only cumulative in nature and where there is sufficient other evidence to prove the point involved. People v. DeBerry, 62 Ill App2d 323, 211 NE2d 26 (1965). Where evidence is conflicting and there is incompetent and prejudicial testimony in the record, the court can not hold that the jury probably acted on the competent evidence only. People v. Rogers, 348 Ill 322, 180 NE 856 (1932). The introduction of the hearsay and the conclusionary testimony, written and oral, constitutes more than harmless error and as such was prejudicial to the defendant and prevented him from receiving a fair trial.

Since we are remanding the cause for a new trial it will be necessary to discuss the other points raised by defendant.

445

Defendant contends that the trial court erred in admitting evidence concerning defendant's silence at a time when prosecutrix made a statement accusing defendant of having raped and robbed her. The prosecutrix testified at trial that, after viewing the lineup and identifying defendant as her assailant, she was taken into another room, and in the presence of defendant and detectives Wallenda, Spellar, and Cole, she gave an oral statement that on the night of November 26th she had been assaulted and robbed by Mr. Turner. She further testified that defendant said nothing; "that he didn't make a sound." Detective Spellar also testified that defendant remained silent during the accusation by the prosecutrix. The officer further testified that, after she left the station, defendant denied knowing or ever having seen her.

 Defendant points out that a footnote in Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694 (1965), states that the prosecution may not use at trial the fact that he stood mute in the face of accusation. But Johnson v. New Jersey, 384 US 719, 86 S Ct 1774 (1966), held that Miranda would apply only to trials begun and cases commenced after it was announced. Nor is the Miranda decision applicable to the retrials of cases, the first trial of which commenced prior to the date of that decision. People v. Worley, 37 Ill2d 439, 227 NE2d 746 (1967). And our Supreme Court in People v. Aughinbaugh, 36 Ill2d 320, 223 NE2d 117 (1967), decided subsequent to Miranda, held that the "tacit admission" rule obtains in this State, though such evidence should be received with caution and only when the conditions upon which it becomes admissible are clearly shown to exist. An admission may be implied from the conduct of the party charged with a crime who remains silent when one states in his hearing that he was concerned in the commission of the crime, when the statement is made under

446

circumstances which allow an opportunity to him to reply where a man similarly situated would ordinarily deny the imputation. People v. Bennett, 3 Ill2d 357, 121 NE2d 595 (1954). There is nothing in the record to indicate that defendant's silence in the instant case was induced by such circumstances as fear of bodily harm, physical pain and suffering, threats or advice of counsel. It was an affirmative accusation by prosecutrix against defendant, which under the circumstances, called for a spontaneous denial by defendant. The cases cited by defendant in which the admission by silence was held inadmissible are distinguished clearly from the instant case. In People v. Hanley, 317 Ill 39, 147 NE 400 (1925), defendant responded to an accusation of guilt contained in a confession of a codefendant by telling the codefendant to keep still and by saying, "it will take twelve men to try me." In People v. Bennett, supra, defendant had asked for counsel and had denied participation prior to standing mute during a codefendant's confession. In People v. Kozlowski, 368 Ill 124, 13 NE2d 174 (1938), prior to his silence during an accusation, defendant had been ordered to "keep his mouth shut," and had denied participating in the crime charged. In the instant case none of these circumstances were present, nor did defendant's subsequent denial destroy the admissibility of his prior silence. It was not error to admit evidence of defendant's silence in the face of the complainant's accusation.

■■ ■■ Defendant finally contends that the court erred in refusing to suppress evidence seized from the defendant. Officer Malinowski testified that he and another officer observed the defendant driving 35 miles per hour in a 25 mile per hour zone at about 12:30 a. m. As they pulled defendant over to the curb, they observed that the vehicle had no rear license plate properly displayed, although the plate was propped up in the rear window.

After he had been stopped, they also noted that one of the headlights was burned out. After informing defendant of these violations they asked to see his driver's license. But he handed them instead a traffic ticket on which the date for court appearance had expired. At this point, officer Malinowski informed defendant that they would have to transport him to the district station to post bond. The officer asked defendant if he had any weapons. Turner replied that he had, and the officer took from his suit coat a .38 revolver, which was admitted into evidence. It is true that a mere traffic violation without any other additional circumstances will not usually justify a search of the car. But in view of the circumstances of this arrest, and after the defendant informed the officers that he had a weapon, it would have been foolhardy on their part to allow him to keep the gun. The officers were justified in searching defendant for their own protection before taking him to the police station to post bond for the traffic offenses. People v. Thomas, 31 Ill2d 212, 201 NE2d 413 (1964) ; People v. Zeravich, 30 Ill2d 275, 195 NE2d 612 (1964). The gun properly was admitted into evidence.

For the reasons stated above, the judgment of the trial court is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

BURKE, P. J. and LYONS, J., concur.