THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALEXANDER FAIR, Defendant-Appellant.

First District (3rd Division)   No. 62706

Opinion filed January 19, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Edward J. Berman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

In a bench trial defendant, Alexander Fair, was convicted of the offenses of rape and armed robbery and received concurrent sentences of 8 to 24 years on each count. On appeal defendant contends: (1) that the trial court erred in admitting certain exhibits into evidence, namely a police artist's sketch and the defendant's coat; and (2) that he was not proved guilty beyond a reasonable doubt. Since we find it necessary to reverse and remand based upon the trial court's prejudicial errors in admitting such evidence, we will limit our discussion of this case to those facts and evidence pertinent to defendant's first contention on appeal.

The prosecutrix testified in part as follows. At about 11 a.m. on September 20, 1974, she was sleeping in bed with her three-year-old son next to her. She was awakened by the squeaking of the den floor, raised up, and saw a man in the den. She identified defendant as that man and stated that he had a knife in his hands. Defendant ordered her out of bed and asked if she had any money. She responded that she did not. Defendant then asked if anyone else was in the house. She again responded negatively, but indicated that she expected her husband back in a few minutes. She had remained in bed and defendant approached her. He again ordered her out of bed. When she started to rise he insisted she had money. She again denied having money. She said she had some jewelry and reached for a jewelry box but defendant grabbed it. She gave him a watch and ring from the box which he put in his pocket. Defendant then ordered her to lie down and pull up her gown. When she did not respond he pushed the gown up and proceeded to have intercourse with her. The act lasted 10-15 minutes, during which she continued pleading for her safety and telling him that her husband would be back back shortly. After the act of intercourse was completed defendant warned her not to tell anyone or call the police, because he had some friends on the west side who would "take care" of her. Defendant left the room and went to the basement room where the prosecutrix's 15-year-old son slept. The prosecutrix then put on her robe, took her little boy, and went to her neighbor's house. She explained to the neighbor what had happened and the police were called. She was taken to the hospital, and subsequently returned home at 1:30 p.m. and learned other property was missing: most of her 15-year old son's clothing, including a size 42 brown suede-like

jacket with a gold and black lining of a silk-like material, a camera, a 10-speed bike, and some records. Her husband owned a jacket similar to the one taken. During the incident defendant had on a dark, waist-length jacket with silver stays around the bottom and across the back and top, and a dark, puffy-type hat with a small bib.

On October 7, 1974, the prosecutrix was standing near her basement window talking on the phone when she noticed a man on the corner waiting for a bus. He looked familiar so she hung up the phone and went upstairs to get a better look at him. She testified over objection that she recognized the man as her assailant from his profile, from the fact that he was wearing a cap similar to the one worn by her assailant, and that he was wearing her son's jacket. She called the police who arrived quickly but after defendant had boarded a bus. The police followed the bus and returned shortly stating they had a man in custody. The man was not shown to the prosecutrix at that time. The next time she viewed defendant was in a lineup at the police station. She identified people's exhibit no. 1 as her son's jacket, people's exhibit no. 2 as the hat worn by defendant on both September 20 and October 7, and people's exhibit no. 3 as her husband's jacket which matched her son's.

Upon cross-examination the prosecutrix stated that she had gone to bed at about 11 p.m. on September 19 and was awakened by the creaking floor at 11 a.m. on September 20. The curtains were not closed and the shade was not pulled all the way down. After defendant was arrested the prosecutrix indicated to police that she wished to be "doubly sure" and view defendant more closely. She was taken to a four-man lineup where she identified defendant as her assailant. Her husband's and son's jackets were purchased at Goodman's Department Store on Cicero Avenue. She had last seen her son's jacket in his room on the evening of September 19. She had described her assailant to police as 5'8" tall, 140-150 pounds, medium build, medium brown complexion, black hair and full beard. The bus stop at which she saw defendant on October 7 is approximately 100 yards from her house.

Upon redirect examination the prosecutrix testified that she also talked with a police artist, who had prepared a sketch. Over defense counsel's objection she was shown the sketch, marked as people's exhibit no. 4, and testified that it accurately portrayed the description she gave the police artist.

Officer Edward Torba testified that on October 7 he was working a squadrol and responded to the prosecutrix's call. He observed a man boarding a bus across the street, followed the bus, pulled it over, and arrested the man. He identified defendant as that man. The coat and cap already marked for identification as people's exhibits no. 1 and no. 2 were taken from defendant upon his arrest. Before going to the station they

stopped at the prosecutrix's house, but she could not see defendant because he was in the back of the squadrol at the time.

People's exhibits nos. 1 to 4 were then admitted into evidence over objection.

Defendant testified in his own defense. He is 6 feet tall, 6 feet 2 inches in his shoes, and weighs 145-150 pounds. Until he was laid off on September 13, defendant worked for Wells & Gardner Electronics Corporation located at Diversey and Kildare. On September 13 at 11 a.m., he was there to pick up his last salary check. He arrived there about 11:15, picked up his check and then had lunch at the plant with some friends at about 11:30. He had purchased the brown coat at a shopping center at Maxwell and Halsted in May of 1974, could not recall which store, tentatively giving the name of Ray's Department Store. The store was not on the corner but rather on Maxwell and the east side of Halsted.

Charles Burnett testified as an alibi witness for the defense. He has known defendant 11 or 12 years and worked with defendant at Wells & Gardner Electronics. Burnett was laid off in December and defendant about two weeks before that. He was not sure if defendant was actually working on September 20, but he did see him there. They had lunch together around 11 a.m. Upon cross-examination Burnett testified that he saw defendant at work a number of times after September 20.

It was then stipulated that the records of Wells & Gardner Electronics showed that defendant had been laid off September 13 and his last check would have been available on September 20.

■■ Initially, we turn to defendant's contention that the coat he was wearing when arrested was improperly admitted into evidence. We disagree. The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged, and any circumstances may be put in evidence which tend to make the proposition at issue more or less probable. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied,* 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627 (1974); *People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97, *cert. denied,* 402 U.S. 924, 28 L. Ed. 2d 663, 91 S. Ct. 1387 (1971).) Physical evidence may be introduced where there is proof to connect the evidence to defendant and the crime. *People v. Smith* (1974), 18 Ill. App. 3d 859, 310 N.E.2d 734; *People v. King* (1973), 10 Ill. App. 3d 847, 294 N.E.2d 300.

■■ In the case at bar, defendant was wearing the coat when arrested and the prosecutrix identified it as the coat taken from her son's room on the day of the incident. In addition, the coat matched the coat belonging to the prosecutrix's husband which had been purchased at the same store as the son's. Thus, the coat was sufficiently identified as to be admissible. (See *People v. Pittman* (1963), 28 Ill. 2d 100, 190 N.E.2d 802; *People v. Foster* (1919), 288 Ill. 371, 123 N.E. 534; *People v. McNeil* (1970), 123 Ill.

App. 2d 285, 260 N.E.2d 82, *aff'd,* 52 Ill. 2d 409, 288 N.E.2d 464 (1972).) The purpose of demonstrative evidence is not necessarily to prove an issue in the case, but rather to aid the trier of fact in interpreting, understanding, and weighing other evidence and testimony. *People v. Navis* (1974), 24 Ill. App. 3d 842, 321 N.E.2d 500.

■■ Defendant's claims that he purchased the coat, that such ordinary coats can be purchased almost anywhere, that many such coats must exist in this area, and that this coat had no particularly distinguishable feature by which an identification could have positively been made go to the weight to be given such evidence by the trier of fact, and not to its admissibility. The propriety of receiving demonstrative evidence rests primarily within the discretion of the trial judge (*People v. Smith* (1974), 17 Ill. App. 3d 494, 308 N.E.2d 257; *People v. Lawrence* (1970), 126 Ill. App. 2d 202, 261 N.E.2d 459), and exercise of that discretion will not be interfered with absent abuse which prejudices the defendant. (*People v. Navis* (1974), 24 Ill. App. 3d 842, 321 N.E.2d 500.) No such abuse is manifested by the record. Furthermore, even though defendant was not charged with taking the coat, no prejudice can be claimed by its introduction. The coat was admissible as relevant and material to the issues of identification and credibility. *People v. Mentola* (1971), 47 Ill. 2d 579, 268 N.E.2d 8.

■■ However, defendant correctly contends that it was error for the trial court to allow the police artist's sketch into evidence. The sketch constituted impermissible written hearsay evidence. (*People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485, *cert. denied,* 426 U.S. 953, 49 L. Ed. 2d 1192, 96 S. Ct. 3179 (1976); *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317.) The State concedes that the introduction was improper, but claims that it was harmless error. We cannot agree. In view of the fact that defendant was identified by but one witness, such an error in admission of evidence may not be regarded as harmless. (*People v. Lukoszus* (1909), 242 Ill. 101, 89 N.E. 749; *People v. Turner; People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126.) There was conflicting testimony at trial as to the defendant's appearance and the description given police by the prosecutrix, as well as in the alibi defense. While ordinarily such matters merely go to the weight and credibility to be given by the trier of fact to the testimony of the various witnesses, in the instant case the admission of the sketch as evidence might have bolstered the identification of defendant by the prosecutrix and might have had the effect of corroboration. (*People v. Wright.* See also *People v. Harrison* (1962), 25 Ill. 2d 407, 185 N.E.2d 244.) The error cannot be regarded as harmless, even where the testimony of the prosecutrix alone might otherwise be labeled clear and convincing. (See *People v. Turner.*) Although the testimony of a single witness may sustain a conviction, the

record in the case must be free of prejudicial error. (*People v. Wright.*) We find *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485, in which admission of an artist's sketch was held harmless error, to be factually inapposite. In *Jones* there were apparently no conflicts in the identification evidence presented to the court, and thus there was no possibility that the improperly admitted hearsay evidence might, as in the instant case, lend credence to an identification which had been challenged not only by defendant's own evidence, but by alleged discrepancies in the identifying witness' evidence.

The possibility of prejudice in the instant case by the erroneous admission of the sketch was aggravated by the State's closing argument to the trial court. Repeated references were made to the sketch to rebut defendant's contention that inconsistencies between defendant's appearance and the description given police by the prosecutrix made her identification testimony unreliable.

Nor can we hold admission of the sketch harmless error based upon the presumption that where a case is tried by a court without a jury the court considered only competent evidence in reaching its decision. (*People v. Robinson* (1964), 30 Ill. 2d 437, 197 N.E.2d 45; *People v. Glanton* (1975), 33 Ill. App. 3d 124, 338 N.E.2d 30.) This presumption is overcome if it affirmatively appears from the record that the evidence in question was considered by the court. (*People v. Mankowski* (1975), 28 Ill. App. 3d 641, 329 N.E.2d 266; *People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87.) In the instant case, the presumption is rebutted by the fact that the trial court admitted the sketch into evidence over the objections of defense counsel. Such actions indicate the trial court's belief that this evidence was in fact competent and, therefore, we cannot presume that the evidence did not enter into the court's consideration of the case. *People v. Ford; People v. De Groot* (1968), 108 Ill. App. 2d 1, 247 N.E.2d 177.

For the foregoing reasons we find that the trial court committed reversible error in admitting the police artist's sketch into evidence, and thus defendant should be given a new trial. In view of this holding we do not consider the other contention raised on appeal and express no opinion as to guilt nor analysis of the evidence.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.