THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEITH D. ROGERS, Defendant-Appellant.

Fifth District   No. 77-352

Opinion filed August 31, 1979.

Michael J. Rosborough and Debra Knight Loy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Keith Rogers appeals from a judgment of the circuit court of Williamson County entered on a jury verdict finding him guilty of the offense of armed robbery. Defendant was sentenced to a term of 6 to 40 years imprisonment following a sentencing hearing at which arguments in aggravation and mitigation were considered. Defendant contends on appeal that he was denied a fair trial by the introduction into evidence of an "Identi-kit" composite sketch of the alleged robber.

After thoroughly reviewing the record, we believe that the defendant was indeed denied a fair trial by the admission of the police composite into evidence and the jury's consideration thereof.

The facts disclose that a service station in Marion, Illinois, was robbed in the early evening hours of November 15, 1976. With the aid of a handgun, $119 in cash was taken from the attendant on duty, Hubert Edward Moake. Moake testified that he was sitting inside the station building, reading a magazine, when he observed a man approaching from about 30 feet away. The front of the building was glass with approximately 11 lights on the inside and 8 fluorescent lights illuminating the driveway. After the man entered the building he turned away from Moake, remarking that it was cold outside and when he turned around again he had a gun in his hands. Moake testified that he was ordered into the back room and proceeded to walk there backwards, facing the man as he went. He turned away from the robber when he bumped into a desk and handed over a roll of bills in his shirtpocket when money was demanded. Moake also reached for and handed over a money sack,

glancing sideways at the robber's face as he did so. The robber then left the room, the door to which Moake closed and locked until he was sure the man had gone. When Moake came out, the telephone had been disconnected and the robber was nowhere in sight. Moake asked the woman customer who had driven up to call the police.

The crucial issue at trial was the identification of the defendant and the complaining witness was the sole source of evidence on this matter. Although Moake was positive regarding his in-court identification of the defendant, there was some discrepancy between his testimony on direct and cross-examination. He first testified that his total viewing time of the robber was 11 or 12 seconds, which on cross-examination he reduced to 8 or 9 seconds. When further pressed, he stated that he observed the robber inside the station for 30 seconds which he then subsequently amended to not more than 15 seconds. He also stated at first that he could not describe the robber's clothing but then testified that the man wore a Levi jacket and blue jeans. Moake was unable to describe the type or color of the gun held by the robber, saying that only two inches of the barrel was visible and it appeared to be bluish-silver. The one characteristic about which Moake was consistent was that the robber wore wire-rimmed glasses, similar to the ones defendant was wearing at trial.

Defendant put on an alibi defense, calling two witnesses to testify to defendant's presence at a birthday party in Centralia on the night of the offense. In rebuttal, the State presented evidence that the guest of honor at the party was allegedly in Jacksonville at the time making a police report. Defendant further presented evidence that he had never owned a pair of wire-rimmed glasses prior to November 23, 1976, approximately 8 days after the robbery, when his mother picked up the ones he was wearing at trial from the optician. Receipts showing the date of delivery and purchase price were introduced into evidence along with defendant's old dark-framed glasses which he stated he had worn since childhood. The State's evidence concerning their investigation of the scene revealed a broken telephone receiver and the recovery of the moneybag nearby. Neither of these items was connected in any way with the defendant nor did they yield any identifiable fingerprints.

Moake assisted the police in making a composite sketch of the robber later that evening. The composite description listed the robber as a white male, aged 20 to 24, 5'10" to 5'11" in height, 135 to 140 pounds in weight, with light brown hair, a moustache, and wearing glasses. That description essentially matched the one he gave police at the scene except that he described the robber's hair as being reddish-blonde. At the hearing on the motion to suppress the identification, Moake testified that he first told the police that the robber's hair was blondish-brown. Defendant, in fact, has brown hair, is 5'8" tall, and weighs 140 pounds.

The "Identi-kit" used to make composites of suspected criminals consists of a series of plastic overlays, each containing a different type of facial feature. There are slides corresponding to chin lines, lips, noses, eyes, eyebrows, beards, etc. They are placed one on top of another until an image resembling the alleged suspect begins to emerge. The overlays are numbered so that composites can be broken down and recreated. The police officer who assembled the composite testified that the plastic overlays are general guidelines, proven by statistics and selected by computers, which break down facial features into their basic characteristics. The victim of a crime describes the suspect's approximate age group and height, and the characteristics are chosen from those categories. The police officer further testified that composites are primarily used as aids in apprehending individuals suspected of crime.

Moake was asked to view a group of photographs several days after the robbery but made no selection. No picture of the defendant was included. Moake was shown a second group of photographs approximately a week and a half after the robbery and tentatively picked the defendant, saying that it looked like the man but that he wanted to see an enlargement or else see him in person to be sure. Moake was taken to a lineup at the Franklin County sheriff's department where defendant was being held on a charge of armed robbery in that county. The lineup was held one month after the robbery and after Moake had seen both the picture and the composite of the defendant. Any testimony at trial concerning Moake's identification of the defendant at the lineup was suppressed because the defendant's sixth amendment right to counsel was violated.

■■■ Turning now to the contention that the introduction of the "Identi-kit" composite into evidence served to deny the defendant a fair trial, we will begin by restating the general rule that composite drawings or sketches of suspects are viewed as hearsay evidence and subject to all the infirmities of that category of evidence. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848; *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317; Annot., 42 A.L.R.3d 1217 (1972).) The reason such drawings and sketches are considered to be hearsay is because part of their value rests upon the credibility and competency of some person other than their creator and because the creator's beliefs and interpretations are inevitably woven into the final product. *People v. Turner*; Annot., 42 A.L.R. 3d 1217 (1972).

In this case the State argues that the admission of the composite sketch of the robber constitutes harmless error because both the artist and the describing victim were present at trial and subject to cross-examination, and because the sketch was only one of several methods of identification used at trial and therefore did not improperly influence the

jury. In so arguing, the State relies upon *People v. Slago* (1978), 58 Ill. App. 3d 1009, 374 N.E.2d 1270, *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340, and *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485. Reliance on these cases by the State is misplaced as the propositions asserted are taken out of context and relate to different factual circumstances.

In *Slago* the convicted murderer of a 16-year-old girl sought to introduce into evidence a composite sketch of the alleged real murderer which he had prepared with an Identi-kit. The defendant had testified at trial that two hitchhikers picked up by the victim had killed her and threatened to do the same to him if he told anyone what had happened. The defendant had not earlier described the other men or shown the sketch to the police or prosecutor. Defendant's purpose in seeking to admit the composite was to show the purported likeness of the hitchhiker to defendant's description of him. Although both the artist and the person giving the description were present and subject to cross-examination in *Slago*, the court nevertheless held the composite inadmissible because it violated the rule which prohibits a witness from bolstering his own testimony with evidence of prior consistent statements. *Slago* cited *Castillo* as an example of when the admission of such composites can be viewed as harmless error on the theory that both individuals playing a part in its creation are present *and* there is no useful purpose to be served by excluding it. The *Slago* court found such a purpose in the prohibition against enhancing one's credibility when it has not been impeached. *Slago*, therefore, is not support for the State's proposition that the presence of the participants in the composite's creation satisfied the purpose behind the hearsay rule and thus renders the admission of the composite harmless. *Slago* in fact states that this is not enough. The admission of the composite must not operate to defeat some other equally important evidentiary rule.

In *Castillo*, a conviction for rape and armed robbery was affirmed, and the admission of a composite sketch of the alleged perpetrator was held to be harmless error in light of the clear and convincing identification of the defendant by three occurrence witnesses. The factual differences between *Castillo* and the present case render *Castillo* nonsupportive. In *Castillo*, three occurrence witnesses to the offense separately described the offender to a police artist, separately viewed two groups of photographs from which each picked the defendant who was dressed differently and appeared without his glasses in one of the sets, and separately pointed out the defendant in a crowded courtroom where defendant was sitting with his lawyer. In addition, there was no dispute regarding each witness having been close enough to the offender for a sufficient period of time under circumstances adequate for observation at

the time of the offense. The court held that in the context of this case the admission of the composite and its exhibition to the jury could not be viewed as reversible error or an abuse of discretion due to the overwhelming evidence of defendant's guilt. The court stated that errors are harmless where it appears that they could not reasonably have affected the result. Furthermore, there was no hint of impropriety in the identification procedures used by the police. The court distinguished the case of *People v. Turner* (1968), 91 Ill. App. 2d 426, 235 N.E.2d 317, which held that the admission of a composite was reversible error on the grounds that it involved a one-witness situation and the identification evidence was conflicting. In comparison to this case, it should be noted that we are dealing with a one-witness situation and that the opportunity for adequate observation of the witness at the time of the offense is disputed. Furthermore, the identification procedures used by the police in the present case were definitely improper insofar as the lineup is concerned.

While the testimony of one identification witness is sufficient to convict if the circumstances support a finding of reliability, the record in such a case must be free from the possibility of prejudicial error. (*People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746.) The number of identifying witnesses and the circumstances surrounding the identification in *Castillo* were sufficient to render any resultant error from the admission of the composite nonprejudicial because it was not reasonable to presume that the jury was unfairly influenced by it. The possibility of unfair influence in the present case cannot be underscored in view of the lack of corroborating circumstances and the sole testimony of one witness.

Finally, the State relies upon *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485, to support its proposition that the admission of a composite sketch is harmless error where it is merely one of several methods used at trial to identify a defendant, because then there is no risk that the jury has been improperly influenced. While it is not clear from the case whether the describing witness was the sole identifying witness at trial since there were other eyewitnesses to the fatal shooting involved, there are other factual differences between the cases which restrict *Jones* to its facts. The identifying witness in *Jones* was a 12-year-old girl whom the defendant had grabbed and held a shotgun to her head as a threat to coerce the deceased and two other men present in an apartment to deliver some "stuff." The defendant then shot the deceased in front of the girl and the other men. The methods of identification used at trial included a police sketch made at the girl's direction, a photograph of the defendant which she had positively selected from a group of six, a lineup identification by her and her in-court identification of the defendant.

There does not appear to be any dispute over proper opportunity to view the offender at the time of the incident. In the present case, the only source of identification other than the in-court testimony of Moake which can fairly be considered is his on-the-scene opportunity to observe the offender, which has clearly been disputed. This is not a case where we have several different clear and concise identifications involved, as in *Jones.* The photographic identification was not positive by any means. Moake stated that he "thought" it was the man but wanted to see him in person to be sure. We cannot retroactively elevate this identification to a level of certainty just because the lineup turned out to be unusable. The State in its brief argues that there was an "identification made from two groups of photographs" which provided an alternative method of identification on which the jury could rely. We are at a loss to note from whence the second photographic identification was made, as there is no support for it in the record. Additionally, the one photographic identification which does appear in the record was not definite and therefore cannot fairly be regarded as a separate "identification."

The defendant has cited *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317, as authority for holding police sketches to be inadmissible hearsay and reversible error where there is only one identifying witness. The State seeks to distinguish *Turner* on the ground that the prejudice was highlighted by permitting a police officer to testify to defendant's likeness to the sketch, an event which did not occur in the present case. It is to be noted that the *Turner* court viewed the admission of the sketch to be improper, irrespective of the police officer's testimony concerning it, although it is not clear whether the court would have viewed it as prejudicial error requiring reversal without such corroborating testimony. At any rate, the court further held that the error in admitting the composite and the testimony was amplified by the prosecutor's closing remarks in reference to them. The same situation transpired in the present case. In referring to the composite on closing argument, the prosecutor stated:

"This is used to aid police officers to be on the lookout for a man generally resembling this. * * * We will be the first to admit it that it is not perfect, but we had to first find someone to arrest and that someone cannot be someone who is innocent. That someone has to be the man that, in fact, did it. It does another thing though. Does it not tell you that, in fact, when Hubert Edward Moake testified from the stand that that is the man that he is correct? Does it not establish that he did have the ability and opportunity to observe this man's face and that he did, in fact, observe this man's face and he observed his body, because if he had not he wouldn't have been

able to describe him. Yet counsel would have you to believe that he didn't have the opportunity to observe and he is mistaken."

These comments improperly bolstered the importance of the erroneously admitted composite. Where the evidence is conflicting and there is incompetent and prejudicial testimony in the record, the court cannot hold that the jury probably acted on the competent evidence only. *People v. Turner* (1968), 91 Ill. App. 2d 436, 445.

Notwithstanding the fact that the *Turner* court did not specifically rule on whether the admission of the composite in a one-witness situation would have been reversible error had the police officer not testified to its purported accuracy, subsequent Illinois cases have so ruled. In *People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848, a conviction of rape and armed robbery was reversed and remanded for a new trial due to the admission of a police artist's sketch into evidence where the sole evidence on the issue of identification came from the complaining witness. The court stated that even though the testimony of the prosecutrix alone might otherwise be labeled clear and convincing, the admission of the sketch might have bolstered her identification and had the effect of corroboration, thus eliminating the question of harmless error. (45 Ill. App. 3d 301, 306.) In *Fair*, as in the present case, there was conflicting testimony at trial as to defendant's appearance and the description given police by the victim, as well as in the alibi defense. Furthermore, repeated references to the sketch during the State's closing argument in an attempt to rebut the defendant's contention that discrepancies in the victim's testimony regarding defendant's appearance made her testimony unreliable were seen as aggravating the possibility of prejudice. Finally, *Jones* was distinguished in *Fair*, as it has been here, on the ground that the identification evidence was not disputed, either by defendant's own evidence or by alleged discrepancies in the victim's testimony.

In *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746, testimony concerning a prior identification of the defendant was viewed as hearsay and constituting plain error where it was utilized as a substitute for courtroom identification or to strengthen a weak identification. One of two eyewitnesses to an armed robbery failed to appear at trial, and a police officer testified as to her prior identification of the defendant from photographs and at the preliminary hearing. The witness later appeared and testified to the contrary. Since the conviction came to rest solely on the identification testimony of the one remaining eyewitness and there were no important corroborating circumstances, the hearsay testimony could not be allowed to stand because of the probability that it impermissibly bolstered the in-court identification.

In this case, there can be little doubt that the admission of the

composite sketch operated to deny the defendant a fair trial. He is entitled to a full, fair, and impartial trial without the consideration or possible influence of improper evidence. The remarks of both the prosecutor and the court removed any question of harmless error. The prosecutor asked Moake on direct examination: "Does that composite accurately and correctly in a general way as much as composites can portray the man that robbed you on November 15?" The trial court stated its belief to be that any evidence which aids in the identification of a party would be admissible in court, including anything to corroborate the testimony or in-court identification to show that it is a true identification. The court remarked that the composite could work against the State as much as it could work for the State and that it is relevant for the State to introduce it so that the jury can consider just what the witness said the defendant looked like immediately after the alleged crime.

■■ The attempt to enhance the credibility of the unimpeached identification witness by corroborating his testimony with hearsay evidence was patently unfair to the defendant. This is not a situation where the evidence can be viewed as merely cumulative and not reasonably affecting the decision of the jury. The conviction rested on the sole testimony of the complaining witness, improper identification procedures were involved, alternative methods of identification were not clear and convincing, there were discrepancies within the witness' own testimony, the witness' on-the-scene opportunity to adequately observe the offender was highly disputed, the defendant presented conflicting testimony regarding his presence and his appearance, there were no corroborating circumstances to link the defendant to the crime, and the State's closing remarks to the jury urging them to consider the composite on the question of the witness' opportunity to adequately observe and correctly describe the defendant all indicate that the jury might have relied on the incompetent evidence in finding the defendant guilty.

For the foregoing reasons the judgment of the circuit court of Williamson County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

KASSERMAN and KARNS, JJ., concur.