THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK JOHN SLAGO, III, Defendant-Appellant.

Second District   No. 76-495

Opinion filed March 28, 1978.—Rehearing denied May 8, 1978.

Ralph Ruebner and Allen L. Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

The defendant, Frank Slago, was convicted of murder after a trial by jury in Lake County, Illinois, and was sentenced to a term of not less than 25 years nor more than 75 years in the penitentiary.

On appeal he contends the trial court erred in excluding from evidence the testimony of a psychiatrist; a threatening note found by defendant's father; and a composite sketch prepared by defendant. In addition, he contends these evidentiary rulings of the trial court denied him his right to present his defense and that the sentence imposed was excessive.

On January 3, 1976, the partially frozen body of Kimberly Muno, a 16-year-old high school girl, was found lying in a creekbed in a rural area off Hanlon Road in Mundelein, Illinois. The next day defendant, who was acquainted with the victim, was called to the Libertyville police station because he had been seen at Hawthorne Center, a retail shopping complex where the victim was employed, at about the time she had last been seen there.

Defendant told the Libertyville police he had gone to Hawthorne Center on January 2, 1976, to see Karen Krueger, a friend and co-worker of the victim whom he had previously dated, to attempt to arrange a date. Defendant saw Karen come out of the store at about 9:30 p.m. and asked to talk to her. While they sat in her car, defendant put his arm around her and his hand on her leg and asked if she would go out with him. She became upset and told him to get out of the car. The defendant apologized, they talked for a few more minutes and he got out. He said he then saw the victim sitting in her car a short distance away warming it up and asked if he could talk to her. Defendant told police he was feeling bad about the way he had made a fool of himself with Karen and wanted to ask Kimberly what he should do. Defendant told police the victim left by herself after they had talked for a few more minutes about Karen and Karen's boyfriend.

When requested by the officers to go to Waukegan for further questioning, he agreed and permitted them to take his photograph together with fingerprints, nail scrapings and hair samples. Upon being questioned by the Waukegan officers, defendant ultimately stated to

them, "I did it, I was there" and demonstrated how the victim was choked. He gave a typed and signed statement of the occurrence to them and a further conversation between defendant and an assistant State's Attorney was recorded on tape. At trial, both the signed confession and tape recording were admitted in evidence and submitted to the jury.

In his confessions, defendant said he had talked to the victim at the shopping center and they drove around for awhile in her car stopping on a pathway near Hanlon Road. They left the car and defendant put his arm around her neck and pulled her to the ground where she struck her head; she seemed dazed and did not move or struggle. Defendant stated he partially removed her clothing, then, realizing what he had done, he panicked and choked her with both hands for several minutes and pushed her body down into the creekbed. He said he drove back near Hawthorne Center in her car where he picked up his own car and returned home. Defendant stated he had not been threatened or promised anything to induce him to make the statement and had been treated well by the officers.

At trial, however, defendant testified his confessions were false. On this occasion he stated that after having made the aborted advances to Karen in the shopping center which he had described to the police, that he and Kimberly left in her car to go to Karen's boyfriend's home in Vernon Hills where defendant intended to apologize for that incident. He stated that the victim picked up two hitchhikers along the road who got into the back seat of her car. Both of these men wore Skidoo ski hats and the one sitting behind the victim had wire-rimmed glasses. Defendant testified these men directed the victim to drive to the Hanlon Road area where the man in glasses forced the screaming girl from the car while the other man restrained defendant from assisting her. He said the first man returned to the car in a little while, threatened defendant with a rock and left again with the girl's purse. Defendant testified they drove him back near Hawthorne Center and, after telling him that if he told anyone what had happened they would kill him or his family, they threw him from the car and drove off. Defendant testified he walked to his car and drove back out near Hanlon Road, saw nothing there, then went home arriving about midnight. His sister and her boyfriend corroborated his time of arrival. He testified he did not report the matter to the police or anyone else as he feared retaliation from the hitchhikers and, also for that reason, falsely confessed to the murder.

The victim's parents reported her absence to the police at about 11 p.m. on January 2 and her car was located the next morning a mile and a half from Hawthorne Center. The girl's body was discovered late that afternoon in the creekbed and her purse and wallet were found nearby still containing her money. A fingerprint examiner from the Northern

Illinois Police Crime Laboratory testified he lifted a palm print from the trim below the window of the inside of the driver's door of the car which, in his opinion, was made by defendant.

Dr. Zech, a physician and pathologist, performed an autopsy on the victim and testified that in his opinion the cause of death was a compression injury of the neck tissues and larynx causing obstruction of the airway. He further testified the injury was probably caused by a series of intermittent pressures and that his observations were compatible with a finding of force applied to the throat with the human hands, either through a series of severe blows, such as karate chops, or the holding of hands on the throat. It was stipulated by the parties that tests of the larynx, mouth, vagina, rectum and skin of the victim, as well as her clothing, proved negative for the presence of spermatozoa.

Defendant contends first that the trial court erred in refusing to allow Dr. Leo Goldman, a qualified psychiatrist, to testify to his opinion that defendant, or someone in defendant's circumstances, could have confessed falsely to the murder of the girl either from fear of the threats allegedly made by the hitchhikers or from shame or guilt for having failed to protect the victim from them. In making this offer of proof outside the presence of the jury, it was shown that Dr. Goldman had examined defendant on two occasions prior to trial. On the second examination, he injected defendant with sodium amytal and, under its influence, defendant related his version of the events which occurred on the night in question, which, according to the doctor, was substantially in accordance with his subsequent testimony at trial.

Defendant's offer of proof consisted first of Dr. Goldman's opinion based upon his examination of and conversations with defendant and, alternatively, on a hypothetical question propounded to him by defendant's counsel based upon defendant's testimony in trial. The trial court excluded Dr. Goldman's testimony based upon his conversations with defendant because he was an examining, not a treating psychiatrist; the trial court then excluded his testimony based upon the hypothetical question as an invasion of the province of the trier of fact.

■■ Concededly, Dr. Goldman was not a treating, or attending, psychiatrist who saw defendant to assist him with some physical or mental illness; there has been no claim in this case that defendant suffered from either a physical or mental illness at any time. He interviewed defendant for the sole purpose of giving testimony in the trial and was, therefore, an examining, or nonattending, psychiatrist.

> "In Illinois, a psychiatrist who examines a patient merely for the purpose of qualifying as a witness ordinarily may not testify as to his professional opinions when they are based upon the patient's description of subjective symptoms; in such a case, it has been held

proper to limit the testimony to hypothetical questions. (*People v. Hester* (1968), 39 Ill. 2d 489, 510.)" (*People v. Limas* (1977), 45 Ill. App. 3d 643, 647, 359 N.E.2d 1194, 1197.)

*Hester* involved the proffered testimony of the opinion of a psychiatrist that the defendant harbored an abnormal fear of physical injury which made him susceptible to pressure from male authority figures and thus might confess to a crime he had not committed when questioned by officers. Additionally, the psychiatrist called by Hester to testify in his behalf would have expressed his opinion that there existed a high degree of probability that the confession attributed to that defendant had, in fact, been dictated by someone else. The court concluded the testimony was properly excluded because the expert witness was not a treating psychiatrist and there was lacking that trustworthiness which ordinarily accompanies symptomatic descriptions by a patient to his treating physician. (*People v. Hester* (1968), 39 Ill. 2d 489, 510, 237 N.E.2d 466, 479.) Such testimony has also traditionally been rejected because of the courts' reluctance to allow the expert opinion of a physician or psychiatrist to act as an unwitting conduit for the self-serving declarations of the patient who has been examined by a doctor for the sole purpose of testifying in trial.

██ Expert medical opinion, and particularly that of a psychiatrist, is necessarily based in large part upon hearsay conveyed to him by the patient. It is admissible as an exception to the hearsay rule where the subjective information upon which the opinion is based is given by the patient in the course of his treatment by his doctor. It is generally considered that the patient will be truthful with the doctor who is endeavoring to cure him of his ills. In the instant case, Dr. Goldman was an examining, not treating, psychiatrist and was properly excluded from testifying to his opinion as to the likelihood of defendant confessing falsely based upon his conversations with him at the examinations. (See *People v. Limas* (1977), 45 Ill. App. 3d 643, 647, 359 N.E.2d 1194, 1197.) Defendant's reliance upon *People v. Zemola* (1972), 9 Ill. App. 3d 424, 292 N.E.2d 195, and *People v. Chism* (1955), 6 Ill. 2d 262, 128 N.E.2d 729, as authority for the proposition that an examining psychiatrist may render an opinion based upon his personal observations of a defendant and on what the defendant told him is misplaced. Certainly objective determinations drawn from personal observations by an examining doctor are not based upon hearsay and are admissible; in the cases cited, however, the conversations with these defendants by the examining psychiatrists were admitted without objection.

██ The trial court here also rejected defendant's offer of proof of the same opinion by Dr. Goldman based upon hypothetical facts propounded to him from the evidence in the case. Defendant testified at

length at trial regarding the events of the night of the murder and of the circumstances causing him to confess to it. He stated his confessions were false and that he did so because of his fear of retaliation by the real murderers if he related what actually occurred. Defendant did not attribute his alleged false confessions to have in any way been compelled by a sense of shame or guilt arising out of a belief he had not adequately protected the girl. When the offer of proof was made there was no evidence in the record that defendant was motivated by guilt brought on by failure to protect the girl from others when he confessed and thus no basis upon which a hypothetical question on that issue could have been based. As the court stated in *People v. Hester* (1968), 39 Ill. 2d 489, 510, 237 N.E.2d 466, 479:

> "[W]e have upheld the refusal of an offer of psychiatric proof which was made with the intent of showing that a defendant was especially likely to issue a false confession in order to escape the coercive pressures applied by his interrogators where, as here, 'there was no evidence of coercive pressure or unreasonable interrogation and thus no basis or need for weighing against powers of resistance.' (*People v. Miller*, 13 Ill. 2d 84, 103; see, also, *Miller v. Pate* (7th cir.), 300 F.2d 414.)"

It is apparent in the instant case that in order to express his opinion that the hypothetical subject "could have" confessed falsely because he failed to protect the girl, Dr. Goldman of necessity would have had to draw upon his personal conversations with defendant or other sources of information. He had no basis under the evidence properly admitted in this case to attribute that motive to defendant who had testified only that he feared the real murderers. As in *Hester* and *Miller*, we find there was no basis in the evidence upon which to premise the tendered hypothetical opinion by Dr. Goldman that defendant could have falsely confessed out of shame or guilt arising from his alleged failure to protect the girl.

There was, however, evidence in the record upon which to base the hypothetical opinion of the doctor that defendant could have confessed falsely out of feared retaliation by the alleged real murderers as defendant did so testify in trial. That alone, however, is not sufficient foundation to permit the opinion evidence tendered here. Defendant correctly argues that the trend in Illinois, as in other states, is to expand the permissive use of expert testimony in all types of cases where the subject matter in issue is "complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation." (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733, 734; *People v. Covey* (1966), 34 Ill. 2d 195, 215 N.E.2d 220.) It has been held that expert testimony can be admissible in such cases even

when directed towards an ultimate issue of fact and does not usurp the function of the jury because it is not compelled to accept the opinion of the expert. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809, 811.) In our view of this case, however, the expert opinion that the hypothetical defendant could have confessed falsely out of fear of the alleged real murderers does not present a concept beyond the understanding of the average person and the jurors did not need the expert advice offered by Dr. Goldman to fully consider that matter. Compare *People v. Beller* (1977), 45 Ill. App. 3d 816, 360 N.E.2d 130; *People v. Rice* (1976), 40 Ill. App. 3d 667, 352 N.E.2d 452; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546; *cert. denied* (1976) 424, U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114; and *People v. Blair* (1974), 17 Ill. App. 3d 325, 307 N.E.2d 679.

■■    The expert opinion offered by defendant in this case is well outside those recognized areas of inquiry wherein psychiatric testimony is commonly called upon to assist the fact-finder to a correct conclusion. It, in effect, would also say to the jury that defendant "could be" testifying truthfully in the trial of the case. We believe the expert opinion offered here would, if admitted, improperly lend the professional credibility of the doctor to the defendant's self-serving declarations and confer upon them a legitimacy which could unfairly affect the trial of the case. (See *Miller v. Pate* (7th Cir. 1962), 300 F.2d 414, 421, *rev'd on other grounds* (1967), 386 U.S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785.) We conclude that the trial court correctly excluded the opinion testimony of Dr. Goldman.

Defendant next contends the trial court erred when it refused to admit into evidence a note allegedly found by defendant's father at the family's place of business on the first day of trial. The note was unsigned and read, "Remember if you tell about us Slago you die." The court sustained the State's objection to its admission in evidence finding it to be hearsay.

■■    Defendant argues on appeal that the note was not hearsay because it was not offered to prove the truth of the statement in it (that Slago would be killed if he told of the hitchhikers), but simply to prove that such a threat had been made to him. If admitted this would, of course, bolster defendant's testimony that he confessed falsely out of fear of the hitchhikers. The trial court was understandably concerned as to the possible sources of the unsigned note suggesting it might come from a crank, it might be genuine or it might be an attempt by someone to tamper with this case. It seems clear that as evidence the note was so conducive to such speculation as to render its probative value worthless and it might properly be excluded on that basis alone, but it could not, in any event, be considered as evidence that threats had been made to defendant by the hitchhikers in the absence of any foundation to that effect. (See *People v. Miller* (1975), 27 Ill. App. 3d 201, 327 N.E.2d 251.)

The hearsay rule prohibits introduction into evidence of an out-of-court statement, written or oral, which is offered as proof of the truth of the matter asserted in the statement. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) In this case the statement was offered to prove defendant was threatened by an unidentified person (the author of the note) who could not be made subject to cross-examination and it was properly excluded. See *People v. Crews* (1969), 42 Ill. 2d 60, 244 N.E.2d 593.

Defendant also contends it was error for the trial court to exclude from evidence a composite picture made by him with the assistance of his attorney's investigator through use of an Identi-Kit. The result, according to defendant, purported to show the likeness of the hitchhiker he had described as wearing glasses. Defendant had not earlier described the two hitchhikers to the police or prosecutors nor had the composite sketch been shown to them prior to trial.

Composite sketches or drawings are held to constitute inadmissible hearsay (*People v. Turner* (1968), 91 Ill. App. 2d 436, 444, 235 N.E.2d 317, 320) as they are out-of-court descriptions of a person by one party who relates the description to another party who then composes a likeness of the person described. While the reported cases have uniformly considered the admission of composite pictures or artist's drawings to be error, they have sometimes determined that error to be harmless in a given case, particularly where both the artist and the person giving the description testify at trial. (*People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485.) Defendant refers us to *People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 349 N.E.2d 454, as recognizing a general rule that the purpose of the hearsay rule is met where the hearsay evidence (in our case the composite picture) has been testified to also by the out of court asserter (in our case the defendant and his attorney's investigator). In *Breitweiser*, a police officer was permitted to testify to his out of court conversation with a seven-year-old complainant in an indecent liberties case. Because the child also testified in trial to the same facts and was subject to cross-examination by defendant, this court felt the safeguards of the hearsay rule were not there violated and no useful purpose would have been served by refusing to admit the testimony. We believe that to be a sound decision under the facts of that case but not helpful to defendant's argument here.

■■ Defendant obviously offers the composite picture—much as he sought to introduce the note we earlier discussed—to enhance the credibility of his testimony in trial. In this instance it is apparent the picture prepared by defendant falls within the rule prohibiting a witness from bolstering his own testimony by evidence that he had made prior

statements consistent with that testimony. (*People v. DePoy* (1968), 40 Ill. 2d 433, 240 N.E.2d 616; *People v. VanZile* (1977), 48 Ill. App. 3d 972, 363 N.E.2d 429.) We find the applicability of that rule to a composite picture prepared by the witness to be the same as it would apply to a prior written or oral statement made by him. In addition, we find there is no discernible difference in the admissibility of the picture, offered by defendant as substantive evidence in this case, and any note, memorandum or report made by any other witness who recorded his impressions of that which he claims to have seen or heard. It is clearly hearsay and not within any recognized exception to that rule.

In view of our determination that the evidentiary rulings of the trial court were correct, we need not consider defendant's further contention he was denied his right to present his defense by the exclusion of the evidence we have discussed.

Finally, defendant asserts that the sentence of 25 to 75 years in the penitentiary imposed by the trial court is excessive. Under the rule recently reaffirmed by our supreme court in *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884, a sentencing decision of the trial court is entitled to great deference and, absent an abuse of its discretion, it will not be altered on review.

■■ Defendant was just 17 years old at the time of this offense and had no prior criminal convictions or juvenile adjudications. From the evidence presented at the sentencing hearing it is apparent he had a good reputation in his community and that he had assumed a major portion of the responsibility for operating a small family business and supporting his mother and sister. In considering the nature of his offense, however, we cannot say the trial court abused its discretion in imposing sentence.

For the reasons stated we affirm the judgment and sentence of the Circuit Court of Lake County.

Affirmed.

SEIDENFELD, P. J., and BOYLE, J., concur.