THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANDREW COX, Defendant-Appellant.

First District (5th Division)   No. 1—87—0646

Opinion filed May 4, 1990.

Randolph N. Stone, Public Defender, of Chicago (Edwin A. Burnette, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Laura J. Diamant, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON* delivered the opinion of the court:

Following a jury trial, defendant Andrew Cox was found guilty of aggravated criminal sexual assault and robbery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—14(a)(4), 18—1, respectively), and was sentenced to 25 years' imprisonment for aggravated criminal sexual assault and six years' imprisonment for robbery. On appeal, defendant contends that: (1) the trial court improperly allowed the State's expert witness to testify about the validity of complainant's allegations; (2) the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault and robbery; (3) the trial court improperly instructed the jury on the issue of aggravated criminal sexual assault; (4) the prosecutor's prejudicial remarks during closing arguments deprived him of a fair trial; (5) the trial court improperly considered the victim's impact statement at the sentencing hearing; and (6) the trial court improperly sentenced him to an excessive term of imprisonment. For the reasons hereinafter set forth, we affirm.

During the trial several witnesses testified on behalf of the State. Complainant testified that on August 17, 1985, at 12 a.m., her mother, Every, and Every's boyfriend, Elvis, drove to a "gameroom" located on 15th and Wentworth Avenue in Chicago Heights, Illinois. Elvis and complainant went into the gameroom, leaving Every asleep in the car. Before leaving the car, however, complainant took Every's "black clutch purse." The purse contained $150 in cash and food stamps valued at $40.

Complainant further testified that at approximately 1:30 a.m., complainant left the gameroom and walked towards Casak, a bar located a few feet from the gameroom, to purchase a pack of cigarettes. Suddenly, defendant grabbed the back of her jacket, twisted her arm behind her back, and forced her across the street. Complainant screamed for help and struggled to escape, but defendant repeatedly struck her head and face, and threatened to kill her if she did not

---

*Justice Pincham heard the oral argument in this case, and following his retirement, Justice Gordon was substituted and he listened to the tapes of oral argument and read the briefs and record.

stop screaming.

According to complainant's testimony, she was forced down a few streets and pushed through a hole in a park fence. Once she passed through the hole, she was no longer in defendant's grasp, so she ran. Defendant tackled her to the ground and fell on top of her. He then turned complainant on her back, "took the purse *** threw it to the side," and then reached into his pocket and threw a white powdery substance on her face. The white powdery substance, a narcotic known as TAC or PCP, got into her nose and burned her eyes.

While complainant was pinned down, defendant had sexual intercourse with her, heedless of her pleas to release her. Afterwards, he picked up the purse and opened it. Complainant demanded that defendant return her purse, but he threatened to kill her if she came close to him. She waited until he left the park before picking up the purse and retrieving its spilled contents.

Complainant left the park and walked down Halsted Street, looking for Every and Elvis. She could not find Every so she continued down Halsted Street. Complainant saw neither a hospital nor a police station within the vicinity. While she walked on Halsted Street for a period of time, a car driven by Andre Walker stopped by complainant, but because she was so frightened, she fled. Walker caught up with complainant and asked her if she was in some kind of trouble, and then with her consent, gave her a ride to Every's home. Every was not at home, so Walker drove complainant to her stepfather's house. Her stepfather suggested that she report the matter to the police.

On cross-examination, complainant testified that there were streetlights on Wentworth Avenue and that there were people on the street when she was allegedly grabbed by defendant, but no one came to her aid. She stated, however, that when she left the park, she did not go directly to the bar, but walked to Halsted Street. She further stated that while on Halsted Street, she neither called the police nor saw St. James' Hospital, which was a block away.

Officer Palcek testified that complainant arrived at the Chicago Heights police station at approximately 5 a.m. and described her assailant and the events that occurred. He said that complainant appeared disoriented, confused and had obviously been beaten. He further said he traced the route earlier taken by defendant and then drove complainant to the emergency room at St. James' Hospital. On cross-examination, he testified that complainant did not inform him that she was in the gameroom with Elvis or that her mother was asleep in the car.

Dr. Asher, complainant's treating physician, testified that com-

plainant arrived at St. James' Hospital at 6 a.m., and informed him that she had been grabbed around the neck, struck in the face and head, and raped. His external examination revealed some swelling around her right eye and neck, but X-ray results confirmed that she had no broken bones or fractures. On cross-examination, Dr. Asher testified that the X-ray results revealed that the soft tissue on complainant's neck was normal, and, other than mild swelling, there was no evidence of traumas.

Additionally, on cross-examination, Dr. Asher said that he had treated about 100 alleged rape victims, and when asked on redirect examination how he remembered complainant, the following exchange took place:

"A. Well, just a subjective feeling, her demeanor was such that my level of suspicion, in terms of the validity of her claims, was perhaps—.

MR. MC KEIGUE [defense counsel]: Objection, your Honor, suspicions, assumptions.

MS. DOOLING [assistant State's Attorney]: Judge, I think he brought it up when he inquired of the hundreds and he remembers this one.

THE COURT: The objection will be overruled.

MS. DOOLING: Q. What was unusual about her, Doctor, that you remember?

A. There are many people, there are many people we see with alleged sexual assault, who, indeed, subjectively don't seem terribly upset or disturbed. And though, of course, from my point of view, I never know, in any given case, if it is a real assault or not. A person who comes in distraught, upset, certainly arouses more apparent validity for the claim than someone who comes in sort of grinning and smiling and seeming not terribly upset."

Detective Schmidt testified that at 9:20 a.m., he spoke with complainant and she identified defendant from 1 of 10 photographs. His description of complainant's physical appearance corroborated the testimony given by Officer Palcek. He stated that complainant appeared very upset and cried excessively, her hands trembled, and there was swelling on the right side of her head, reddish bruises on her right cheek and some kind of mark on her throat. After speaking with complainant, he and complainant drove to the park, took photographs and searched for evidence. He found some of the contents of Every's purse in a park trash can. After he completed his investigation at the park, he and complainant returned to the police station and obtained

latent fingerprints from Every's black purse. Four latent fingerprints obtained from the purse matched defendant Cox's fingerprints.

Detective Schmidt also stated that, at 4 p.m., complainant reviewed a lineup of five men and identified Andrew Cox. At 5:20 p.m., *Miranda* warnings were read to defendant, and, an hour later, defendant confessed that he beat complainant and had sex with her, and he took money from her purse. An assistant State's Attorney wrote out defendant's statements and read them to the defendant before he signed.

Carl McCann testifying for the defense stated that in the early morning hours of August 17, he was driving to the gameroom on 15th and Wentworth Avenue when he saw defendant and a young lady walking down the street. He did not see defendant choke or twist the lady's arm nor did he hear her scream. On cross-examination, however, he testified that he could not give a description of the lady he saw with defendant nor was he certain about the date.

Defendant testified on his own behalf. He stated that on August 17, he was standing outside the bar when he saw complainant exit the bar. He approached her and asked if she wanted to purchase some TAC, and she replied, "Wait a minute baby" and went into the bar. Shortly thereafter, complainant came out and indicated that she wanted to purchase some drugs and followed defendant Cox down the street.

Defendant and complainant then walked about half a block towards 14th Street, talked, and stopped to see one of his friends. They entered a park through a hole in the fence. At the park, they kissed and talked and he gave her drugs. After having sex, he walked her back to 15th and Wentworth Avenue and said good-bye.

Defendant testified that at the police station, he informed Detective Schmidt and the assistant State's Attorney that complainant was not forced to the park and that she consented to have sex. Furthermore, he stated that the assistant State's Attorney told him that he would be sent home and not charged with a crime if he signed a statement. He then signed the statement.

On cross-examination, defendant denied making the purported confession, and he also denied that the statement was read to him before he signed. Defendant denied that he told either the police officers or the assistant State's Attorney that he forced complainant to the park, beat her, and had sex with her, but admitted to taking $40 in cash and some food stamps from the purse.

During closing arguments, the defense counsel stated:

"Now, according to the Detective and the State's Attorney

Parchem, a State's Attorney and attorney for four and a half years, he writes down this summary and leaves out the important things \*\*\*. Let's assume [the prosecutor] told you the truth all the way down the line."

In rebuttal, the State argued:

"Counsel would have you believe that everybody is going to put their jobs on the line for this guy. \*\*\* I take offense at that argument, that everybody is lying about the defendant. The officer had a job to do. The Assistant State's Attorney was working felony review. He had to go out, and decide what to do about the case. That was his job."

Following closing arguments, the trial court instructed the jury. After deliberating, the jury found defendant guilty of aggravated criminal assault and robbery. A sentencing hearing was held, and the State presented complainant, who then delivered a victim impact statement. The trial court sentenced defendant to a six-year imprisonment term for robbery and a 25-year imprisonment term for aggravated criminal sexual assault. Defendant appeals.

Defendant contends that the trial court erred in admitting Dr. Asher's testimony that there is more apparent validity to a claim of sexual assault where the alleged victim appears emotionally distraught, as was the complainant. Defendant maintains that, in effect, Dr. Asher was improperly testifying about complainant's credibility. Conversely, the State contends that: (1) Dr. Asher's testimony was within the bounds of his expertise because he was a physician who had a wide range of experience in the treatment of rape victims; (2) the testimony was permitted as a response to defense counsel's attempt to impeach Dr. Asher's recollection on direct examination that he had handled 100 such rape victim cases in the emergency room; and (3) if there were error, it was harmless, and moreover, it was waived by defendant's failure to make a timely objection at trial or to include it in his written post-trial motion.

■■ ■ The State's contention that Dr. Asher's testimony pertaining to the relative credibility of rape victims exhibiting emotional distress was a proper subject of expert testimony is without merit. Without question, expert testimony pertaining to the credibility of a witness is inadmissible where it does not present a concept beyond the understanding of the average person. (*People v. Nix* (1985), 133 Ill. App. 3d 1054, 479 N.E.2d 1147.) In *Nix*, the defendant sought to introduce expert testimony that stress affected the ability of the victim to perceive the details of an assault. The *Nix* court stated:

"The credibility of witnesses in criminal proceedings is

strictly within the competence of the fact finder. (*People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.) Expert testimony regarding the credibility of witnesses is properly excluded if the expert's opinion does not present a concept beyond the common and ordinary understanding of the trier of fact. *People v. Slago* (1978), 58 Ill. App. 3d 1009, 374 N.E.2d 1270.

We find in the instant case that the trial court properly excluded the expert testimony offered by the defendant. The fact that people in stressful situations sometimes have trouble recalling details is well within the comprehension of the trier of fact." (*Nix*, 133 Ill. App. 3d at 1059, 479 N.E.2d at 1151.)

In *People v. Slago* (1978), 58 Ill. App. 3d 1009, 374 N.E.2d 1270, the court upheld the exclusion of testimony of a psychologist that the defendant could have made a false confession out of fear of the alleged real murderers. The *Slago* court stated:

"In our view of this case, however, the expert opinion that the hypothetical defendant could have confessed falsely out of fear of the alleged real murderers does not present a concept beyond the understanding of the average person and the jurors did not need the expert advice offered by Dr. Goldman to fully consider that matter." (*Slago*, 58 Ill. App. 3d at 1016, 374 N.E.2d at 1275.)

Similarly, in the instant case, the fact that there may be more validity or credibility to an emergency room complaint of sexual assault by an alleged victim showing emotional distress than by someone who does not "seem terribly upset or disturbed" is well within the range of understanding and knowledge of the average person and is therefore not a proper subject of expert opinion.

Nor can Dr. Asher's testimony be justified as a response to attempted impeachment. The record does not disclose that defendant attempted to impugn Dr. Asher's recollection of the complainant based upon the large number of rape victims treated by him. The record does disclose that the State raised that question on its own initiative on redirect examination. Moreover, if there would have been an attempt to impeach Dr. Asher's recollection based on the number of victims treated by him, it would not have been necessary to permit the witness to testify as to the complainant's enhanced credibility. The testimony could have simply indicated that complainant, unlike many other alleged victims who are casual and unemotional, made an impression upon him by virtue of her apparent state of emotional distress. There would have been no manifest necessity to permit the witness to elaborate upon the correlation between such distress and the apparent "va-

lidity" of her claim.

The State, however, is correct in its contention that even if it were error to admit testimony touching upon the credibility of the complainant, that error was waived. In order to preserve an issue for review, there must be a specific objection at trial and in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The record discloses that no specific objection to the introduction of this evidence was made at trial. Defendant did make a contemporaneous objection on the grounds that the doctor was testifying about his "suspicions" and making "assumptions," but that objection did not sufficiently specify or relate to the issue he now raises on appeal. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347.) Moreover, defendant did not raise any of these issues in his written post-trial motion. We therefore agree with the State that defendant failed to preserve this issue. We must next determine whether the plain error rule can be invoked.

The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the defendant was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.) In the case at bar, the evidence was neither closely balanced nor was the error of such magnitude that the defendant was denied a fair trial.

Several witnesses, including the complainant, provided testimony supporting defendant's guilt. Complainant's testimony that she was beaten was corroborated by expert testimony and medical evidence. The State's expert witness testified that when complainant came into the hospital, there were visible bruises on her neck and mild swelling around her right eye. Additionally, the police officer and the two detectives who interviewed complainant gave similar testimony of her emotional and physical condition. More significantly, the record discloses that defendant signed a statement admitting to the crimes. Thus, our review of the record demonstrates that the evidence was not so closely balanced as to prompt this court to invoke the plain error doctrine.

Furthermore, the error was not of such magnitude as to deny the defendant a fair trial. The testimony of Dr. Asher was not directed to the issue of the complainant's credibility but rather to corroborate his recollection of the complainant's emergency room examination. Moreover, complainant was exposed to the direct credibility evaluation of the jury when she testified in court, while the testimony of Dr. Asher did not relate directly to her demeanor in court but only to her demeanor in the emergency room. Also, in addition to the testimony of Dr. Asher, there was testimony of Detective Schmidt concerning com-

plainant's state of emotional distress in the immediate aftermath of the alleged sexual assault from which the jurors could have drawn their own inferences as to her credibility. Finally, as previously discussed, there was abundant evidence to support the verdict without the disputed testimony of Dr. Asher, including defendant's written confession.

Under these circumstances, the invocation of the plain error rule as an exception to the waiver doctrine would be unwarranted. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Moreover, this analysis of the evidence would support a finding that, even if not waived, the error in admitting the testimony of Dr. Asher as to complainant's credibility would be harmless, without prejudicial impact. See *People v. Reding* (1989), 191 Ill. App. 3d 424, 547 N.E.2d 1310.

Defendant next contends that the State did not prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault and robbery.

■ Generally, on review, the relevant inquiry when the sufficiency of the evidence is at issue is whether, " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) In reviewing the evidence, it is not the function of the reviewing court to retry the defendant, nor may the reviewing court substitute its judgment for that of the trier of fact on questions relating to the credibility of witnesses and the weight of the evidence. *People v. Sanchez* (1987), 115 Ill. 2d 238, 503 N.E.2d 277.

■ To find defendant guilty of aggravated criminal sexual assault, the trier of fact must find that defendant committed an act of sexual penetration by the use of force or threatening the use of force during the "course of the commission or attempted commission of any other felony." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(4).) When a defendant denies the charge of aggravated criminal sexual assault, however, his conviction will be upheld if there is either some corroboration of the testimony of the complaining witness or the testimony is otherwise clear and convincing. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) The complaining witness' testimony need not be uncontradicted or unimpeached in order to be deemed clear and convincing. *Graham*, 60 Ill. App. 3d at 1045, 377 N.E.2d at 186.

■ Considering all the evidence, which includes complainant's testimony, as well as the testimony of Dr. Asher, Officer Palcek, Detec-

tive Schmidt, coupled with the photographs of complainant after the incident, and defendant's signed confession, in a light most favorable .to the prosecution, a trier of fact could readily find the essential elements of the crimes beyond a reasonable doubt. Defendant admitted on the witness stand that he had sexual intercourse with complainant but alleged that it was consensual, denying any use of force. Complainant testified that she was grabbed, beaten, and struck in the head and face and forced to have sexual intercourse. Other witnesses that saw complainant after the incident gave corroborative testimony of complainant's injuries and emotional condition. Dr. Asher, the treating physician, testified that an external examination of complainant four hours after she had been sexually assaulted revealed swelling and bruises around her right eye and mild swelling and redness on the front portion of her neck.

Defendant maintains that various inconsistencies and discrepancies in the evidence rendered complainant's testimony unbelievable. He points to the doctor's testimony, which tended to show that complainant's injuries were not as severe as she had led the jury to believe. Defendant also points to the fact that she walked past the police station and the hospital without making a prompt complaint. The jury could have attributed other reasons for complainant's failure to make a prompt complaint in light of her own testimony that she was not familiar with the area, and Officer Palcek's testimony that the police department building is not recognizable as a police station. Furthermore, defendant points to the lighted street, the failure of complainant to ask Walker to take her to a hospital or a police station, and the failure of the State to charge him with kidnapping. A trier of fact could have found the essential elements of the crimes notwithstanding such discrepancies. See *People v. Trejo* (1976), 40 Ill. App. 3d 503, 352 N.E.2d 68.

Defendant further raises the question of the sufficiency of the evidence as it applies to his robbery conviction without any argument or citation of authority in his brief in support of his contention. Although contentions which are not supported by argument or citation of authority are waived (*People v. Adams* (1969), 109 Ill. App. 2d 385, 248 N.E.2d 748), we choose to address the issue.

■ A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1987, ch. 38, par 18—1.) The force element of robbery is satisfied if the fear of the alleged victim was of such nature as in reason and common experience is likely to induce a person to part with property for the sake of her person. The

cause which gives rise to the fear must precede or be contemporaneous with the taking. *People v. Whitley* (1974), 18 Ill. App. 3d 995, 311 N.E.2d 282.

■■ After reviewing the evidence in the case at bar, in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of robbery beyond a reasonable doubt. Complainant testified that she was beaten and pushed through a hole in a park fence. When she ran, defendant tackled her to the ground. While he was on top of her, he took the purse out of her hand and threw it on the ground. This is corroborated by evidence that fingerprints obtained from the purse matched those of defendant. Moreover, complainant further testified that after the sex act she saw defendant with the purse and demanded that he return it, but he threatened to kill her if she came close to him. More importantly, defendant admitted that he took money and some food stamps out of the purse. Thus, based on the testimony adduced at trial, a trier of fact could readily have found that defendant took property from complainant by the use of force.

Defendant next contends that the trial court erred in instructing the jury on the issue of aggravated criminal sexual assault. The pertinent instruction was as follows:

> "ANDREW T. COX committed the offense of AGGRAVATED CRIMINAL SEXUAL ASSAULT in that he, COMMITTED AN ACT OF SEXUAL PENETRATION, TO WIT: SEXUAL INTERCOURSE UPON [COMPLAINANT] BY USE OF FORCE AND BY THE THREAT OF FORCE, AND THE CRIMINAL SEXUAL ASSAULT WAS PERPETRATED DURING THE COURSE OF THE COMMISSION OF THE FELONY OF ROBBERY BY ANDREW T. COX."

Defendant maintains that the evidence shows that the sex act was completed before defendant committed the act of taking the purse, and that there was no evidence that he intended to rob complainant prior to the sex act. We do not agree.

■■ A jury in a criminal case should be instructed as to the theory of the case that may reasonably be inferred from the facts. (*People v. Halliday* (1985), 139 Ill. App. 3d 500, 487 N.E.2d 993.) The prosecution and the defense are entitled to appropriate instructions which present their respective theories of the case, provided that such theories are supported by the evidence. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.) Defendant was charged with aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(4)), and, as part of the aggravating circumstances, the State was

required to prove that defendant committed the criminal sexual assault during the course of a felony. The felony involved was robbery.

Prior to taking the property in complainant's possession, defendant subdued her with physical force and verbal threats to her life. He tackled her to the ground, and when he was on top of her, took the purse and threw it to the side. After he threw the purse to the side, he had sex with complainant. The force used against complainant in committing the sex act and complainant's fear occasioned by such force was present and in effect when he took the purse. The fact that he took money from the purse after the sex act is of no consequence because it could reasonably have been inferred from the facts that the force used was still present when he took the money from the purse. in fact, the record discloses that while defendant was taking money out of the purse, complainant demanded the return of the purse, but defendant threatened to kill her if she came close to him.

In a similar case, *People v. Kleba* (1982), 110 Ill. App. 3d 345, 442 N.E.2d 605, the court rejected the defendant's contention that the sex act was completed before the taking of the property and that the force involved in the commission of the rape could not be imputed to the taking of the victim's property. In *Kleba*, while the victim stood outside her apartment looking for her keys, she was punched in the face and knocked down. While the defendant was on top of the victim, he threatened to kill her if she moved or screamed. The defendant then moved the victim to a dark area and forced her to take off her clothes. While engaged in a sex act, defendant momentarily stopped to loosen the victim's watch. When the watch fell to the ground, he picked it up and put it into his pocket. The *Kleba* court held that there was no doubt that the force involved in the rape and the concomitant verbal threats to the victim's life caused her to part with possession of her watch against her will. (*Kleba*, 110 Ill. App. 3d at 356, 442 N.E.2d at 613.) Similarly, in the case at bar, it could be inferred from the evidence that the force used in committing the sex act caused complainant to part with the purse against her will. Therefore, we conclude that there was sufficient evidence to support the tendering of that instruction.

Next, defendant contends that the prosecution committed reversible error in its closing argument on rebuttal by allegedly providing personal assurance that defendant committed the offense and by placing the credibility of the State's Attorney's office behind the "appropriateness of the conviction." The State maintains that the prosecutor's rebuttal comments were proper and were invited by defense counsel's closing argument.

■■■ Generally, although prosecutors are permitted latitude in their closing arguments (*People v. Burns* (1988), 171 Ill. App. 3d 178, 524 N.E.2d 1164), their remarks must be based on the evidence and reasonable inferences drawn therefrom. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.) Improper prosecutorial remarks in closing arguments do not warrant reversal unless the argument as a whole was so seriously prejudicial that it deprived defendant a fair trial. (*People v. Cunningham* (1984), 130 Ill. App. 3d 254, 473 N.E.2d 506.) Prosecutors are not permitted to comment on their beliefs in the credibility of witnesses, or on their beliefs that defendant would not have been charged had he not been guilty. See *People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368; *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.

■■■ During closing argument defense counsel challenged the credibility of two of the State's witnesses, Parchem, an assistant State's Attorney, and Schmidt, a police detective. He attempted to demonstrate the implausibility of their testimony concerning the circumstances under which defendant signed his written confession by, among other things, pointing to certain facts allegedly admitted by defendant according to Parchem's testimony but nevertheless omitted from the written confession prepared by Parchem and signed by defendant. The prosecutor countered in closing argument that she took offense at the argument that everybody was lying; that neither Parchem nor Schmidt would risk their jobs by lying; and that they simply went about doing their jobs.

The prosecutor did not comment on her personal or professional beliefs in the credibility of the witnesses or in the guilt of the defendant. Unlike the facts in *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330, cited by defendant, the comments of the prosecutor in this case were addressed in support of the credibility of Parchem and Schmidt, who were actual witnesses in the case. The facts pertaining to their employment, experience, and involvement in the case were previously testified to by these witnesses. Consequently, her support of their credibility drew upon facts in evidence. And, the defense of their credibility on rebuttal was invited by defense counsel's comments challenging the veracity of their testimony. (See *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130.) Under these circumstances the statement of the prosecutor that she was offended by defense counsel's aspersions, while technically excessive, was peripheral and harmless. See *Parks*, 168 Ill. App. 3d 978, 523 N.E.2d 130.

■■■ Defendant next contends that the trial court erred in considering complainant's victim impact statement because, in so doing, his

right to due process under the Federal Constitution was violated. In support of his contention, defendant relies on *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529. Such reliance is misplaced.

In *Booth,* the United States Supreme Court held that the introduction of victim impact evidence as an aggravating factor in a capital sentencing hearing violated the eighth amendment to the United States Constitution. (482 U.S. at 509, 96 L. Ed. 2d at 452, 107 S. Ct. at 2536.) The Supreme Court, however, explicitly limited its holding to capital cases. (482 U.S. at 507 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n. 10.) Since the case at bar did not involve a capital offense, *Booth* does not apply.

Defendant further argues that his right to due process under the State Constitution was violated. Our supreme court recently considered that same argument in *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196, and held that admission of victim impact evidence in a noncapital sentencing hearing does not violate a defendant's constitutional rights. (*People v. Turner* (1989), 128 Ill. 2d 540, 578, 539 N.E.2d 1196, 1213.) On the basis of that decision, we find no merit to defendant's argument.

■■■ Finally, defendant contends that 25 years' imprisonment for aggravated criminal sexual assault was excessive because he was remorseful during the sentencing hearing and he did not have a substantial history of criminal activity. We disagree.

Aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(4)) is a Class X felony, carrying a sentence of not less than 6 years' and not more than 60 years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) Thus, defendant's sentence of 25 years for aggravated criminal sexual assault is within the statutorily imposed sentencing guidelines. When the trial court imposes a sentence which is within the statutory limits, it will not be altered on appeal absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial court is in a better position to determine the punishment to impose because the factors used to arrive at a proper sentence are unavailable to the reviewing court. (68 Ill. 2d at 154, 368 N.E.2d at 884.) We find no basis to conclude that the trial court abused its discretion in sentencing defendant. Accordingly, we affirm the judgments of the circuit court of Cook County.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.